TOWN OF THETFORD *v.* JOSIAH HUBBARD.

Under the Revised Statutes, chap. 13, sec. 63, a town may sell the office of first constable at auction, in open town meeting, to the highest bidder, and, after having elected the purchaser to the office, may collect from him the amount of a promissory note, given by him for the price.

The statute,—Rev. St., c. 25, sec. 37,—which requires that exceptions, taken upon the trial of any case in the county court, shall be filed with the clerk within thirty days after the rising of the court, at which the judgment was rendered, has reference only to the final judgment in the case.

Thetford *v.* Hubbard.

When a declaration in offset on book account is filed in the county court, the party may have judgment for the amount due to him at the time of the hearing before the auditor, notwithstanding a portion of his account accrued subsequently to the commencement of the principal suit. The statute,—Rev. St. c. 34, § 4,—which provides, that any sum, not due and payable at the commencement of the suit, shall not be pleaded in offset, has reference to the subject matter of the plea, whether contract, or book account. If any part of the account were due, at the commencement of the suit, the plea is sustained, and the whole account must be adjusted in the ordinary way.

Expenses incurred by an individual in support of a pauper, without the request of the overseer of the poor, cannot be recovered of the town, in which the pauper has his legal settlement.

A tender of a gross sum upon several demands, without designating the amount tendered upon each, is sufficient.

A demand of money tendered, in order to have the effect, if not complied with, to avoid the tender, must be of the precise sum tendered.

To a replication in offset, alleging that the defendant was indebted to the plaintiff in $200, and declaring in two counts, one upon a note for $200, and the other for $200 money had and received, the defendant rejoined a tender of $316,50. *Held*, that the two counts must be regarded as substantially for the same cause of action, and that so the rejoinder was of a tender sufficient to cover the whole replication ;—but that, if the counts were to be held to set forth distinct and independent claims, a general rejoinder to the replication would be treated as a rejoinder of a tender upon each count of the replication, and that so the rejoinder was sufficient.

ASSUMPSIT upon a promissory note for $16,50, dated April 1, 1844, and payable in one year from date. The action was commenced before a justice of the peace, and the defendant filed in offset there a claim upon book account, to the amount of more than $30,00. After judgment and appeal, the defendant pleaded in the county court the general issue, and also filed a declaration in offset upon book account, under Rev. St., chap. 34, sec. 8–11.

Upon the declaration in offset judgment to account was rendered, and an auditor was appointed, who reported, that there was due from the plaintiffs to the defendant Hubbard the sum of $33,39. Of this sum $18,25 accrued subsequent to the commencement of this suit. Among the items which were disallowed of the defendant's account,

was a charge of $4,50, for services in effecting a settlement with Mrs. Percival, and a charge of $8,00 for boarding Mrs. Percival ten weeks, in reference to which it appeared, that Mrs. Percival was poor, and had her legal settlement in Thetford; that she desired the defendant to assist her about certain settlements, which must be made before she could leave Thetford, and he told her he would do so; that the defendant informed the overseer of the poor of her request, and he replied, that he wished he would assist her, and directed him to consult, if necessary, with the attorney who was engaged in the business of the town; and that the defendant, after some time and trouble, effected a settlement which was satisfactory to Mrs. Percival and the town of Thetford, and which was afterwards approved and closed by the town; that the overseer had been previously informed, that Mrs. Percival was in destitute circumstances and lived altogether on charity, and that he must take care of her, and, in the course of making the settlement above mentioned, he asked the defendant, if he could not let her come to his house and stay a few days; that the defendant said he could, and soon after brought her to his house; that the defendant was then absent from the state about ten weeks, during which time Mrs. Percival remained at his house,—but, as it seemed, *contrary* to his expectations; and that the town had at the time convenient accommodations for their poor, of which the defendant had knowledge.

The plaintiffs objected to so much of the sum found due by the auditor, as accrued after the commencement of the principal suit; but the county court, December Term, 1848,—REDFIELD, J., presiding,—rendered judgment for the defendant, for the whole sum reported due by the auditor. Exceptions by both parties; but the plaintiffs' exceptions were not filed in the clerk's office until April 2, 1849.

The case was tried by jury, at the June Term, 1849,—REDFIELD, J., presiding,—upon the general issue.

On trial the plaintiffs gave in evidence the note described in their declaration. The defendant then gave evidence tending to prove, that at the annual March meeting of the town of Thetford, in 1844, the office of first constable and collector was put up at auction, pursuant to a vote of the town, and was sold to the highest bidder; that the defendant was the highest bidder, and the office was sold to him

Thetford *v.* Hubbard.

at the sum of $16,50; that he was afterwards elected to the office by the town; and that the consideration of the note in suit was the sum so bid by the defendant for the office. It appeared, that the office was so put up at auction for the purpose of disposing of it in the best manner for the town, pursuant to the statute, or that that was the intention of the selectmen, by whose direction it was so sold. The office was put up for sale in open town meeting, and there were several bidders, of whom the defendant bid highest; and after the defendant's election, the town, at his request, voted to allow him to serve writs throughout the county. Upon these facts, the court directed the jury to return a verdict for the plaintiffs; and a verdict was returned for $20,71 damages. Exceptions by defendant.

The defendant then pleaded in offset the judgment recovered by him upon book account above mentioned. The plaintiffs replied an offset, alleging that the defendant was indebted to them " in a large sum of money, to wit, the sum of $200," and declaring in two counts,—one upon a promissory note for $200, dated February 7, 1837, and the other for $200 money had and received. The defendant rejoined, that after the making of the promises described in the two counts in the replication, and before the same were pleaded in offset, to wit, on the twenty seventh of December, 1848, he tendered to the plaintiffs $316,50, which they refused to receive; and that he had ever been ready to pay the same to the plaintiffs, and that he brought the money into court; wherefore he prayed judgment, if the plaintiffs ought to maintain their aforesaid action against him. The plainiffs filed their surrejoinder, in which they alleged, that after the making of the tender mentioned in the rejoinder, and before the filing of their replication, they demanded of the defendant " the sum of money due and owing on said note in said plaintiffs' replication mentioned," but the defendant refused to pay the same, or any part thereof, to the plaintiffs; and as to the second count in the replication, they alleged, that the defendant did not tender the money in that count mentioned, as alleged in the rejoinder;—and issue was joined. As to the first count in the replication, the defendant filed his rebutter, in which he alleged, that after the making of the promise, and before the pleading of the same in offset, he tendered to the plaintiffs the sum of $316,50 on the note

mentioned in that count " and two other notes," and the plaintiffs refused to receive the same; and that afterwards, when the plaintiffs demanded the sum of money due and owing upon the note mentioned in the first count, he offered and tendered to them the said sum of $316,50 on that note " and two other notes," and the plaintiffs refused to receive the same; and that the defendant had always been ready to pay the said sum of $316,50. To this the plaintiffs demurred.

At the December Term, 1849,—REDFIELD, J., presiding,—the county court adjudged the rebutter sufficient, and, by consent, found the issue formed upon the surrejoinder, in reference to the tender upon the second count in the replication, in favor of the defendant; and judgment was rendered, that the defendant recover the balance of his set off over the damages recovered by the plaintiffs, being $14,06; to which decision the plaintiffs excepted.

A. Howard, Jr., and J. W. D. Parker for defendant.

The statute provides,—Rev. St. c. 13, § 63,—that " the inhabitants of any town shall have liberty to agree with some suitable person to fill the office of first constable, in such method as they shall judge most advantageous, and such person shall afterwards be chosen by the town." From the very terms the contract is one of a personal nature, that is, the town may select a suitable person and agree with him, and then the town shall choose him. This necessarily implies, that the suitableness of the person is first to be determined. Is not this mode of election in contravention of Part II, sec. 34, of the Constitution? and also of Part I, art. 8? The sale of office at public auction is against public policy. St. 5 & 6 Edw. VI, c. 16. 2 Steph. N. P. 1253. Cruise's Dig. 128. New York, by special enactment, and Maine and New Hampshire by their courts, have determined sales of office to be void and criminal. Meredith v. Ladd, 2 N. H. 517. Groton v. Waldoborough, 2 Fairf. 306.

The charges in the defendant's account for expenses and services for Mrs. Percival should have been allowed. The services were rendered at the special instance of the overseer, and he bound the town. Wolcott v. Wolcott, 19 Vt. 37. Aldrich v. Londonderry, 5

Vt. 441.  *Castleton* v. *Miner*, 8 Vt. 209.  *Washington* v. *Rising*, Brayt. 188.  *Hutchinson* v. *Hutchinson*, 19 Vt. 437.

The objections to that portion of the defendant's account in offset, which accrued after the commencement of this action, are not well taken.  Rev. St. 213, § 8 ; 220, § 9.  *Pratt* v. *Gallup*, 7 Vt. 344.  *Wing* v. *Hurlburt*, 15 Vt. 607.  *Learned* v. *Bellows*, 8 Vt. 79.  *Ambler* v. *Bradley*, 6 Vt. 119.  *Martin* v. *Fairbanks*, 7 Vt. 97.

The plaintiffs' exceptions to the judgment upon the book account were not seasonably filed.  Rev. St. 164, § 37.  *Higbee* v. *Sutton et al.*, 14 Vt. 555.  *Shattuck* v. *Oaks*, 14 Vt. 556.

The rejoinder, setting forth the tender, is sufficient.  Story's Plead. 156.  2 Sw. Dig. 615.  1 Ib. 295.  *Wode's Case*, 5 Co. 114.

The surrejoinder is insufficient.  After the tender is admitted by the pleadings, a plea, setting forth a subsequent demand and refusal, must allege a demand of the exact sum specified as having been tendered.  *Spybey* v. *Hide*, 1 Camp. 181.  3 Steph. N. P. 2607, 2609.  2 Greenl. Ev. 500, § 608.  5 Dane's Abr. 485.

*Hebard & Martin* for plaintiffs.

There is no equity in the defence to the note.  The defendant has had all he expected, and there was no deception in the transaction.  There is nothing against public policy in the transaction ; it has none of the characteristics of a wagering contract.  The statute authorizes precisely such a proceeding as this ; and a statute is not to be held unconstitutional on the ground of policy.

So much of the defendant's account, as accrued after the service of the writ in this action, should have been disallowed as an offset.  The subject of offsets is statutory regulation, and not a common law right.  The statute,—Rev. St. 212, § 1,—provides generally for offsets ; section 4 makes the exception of matters which cannot be pleaded in offset,—one of which is, " Any sum not due and payable before the service of the original writ in the action."  Without a farther provision, no part of this account could be set off.  By sec. 8 and 9 so much of the account, as is not excluded by sec. 4, may be audited and applied in offset ; but the proceedings under sec. 8 and 9 are subject to and controlled by sec. 1 and 4.  Sec. 9 of chap. 36,—Rev. St. 220,—applies only to cases, in which the original action is upon book account.

The rejoinder is insufficient. It does not allege the purpose, for which the money was tendered,—whether upon the note, or upon the money due as alleged in the second count. It does not allege, that it was the full amount due from the defendant to the plaintiffs. In the replication the plaintiffs demand $400, and the defendant should either have tendered sufficient to cover the claim upon the face, or have averred in his plea, that the sum tendered was the full sum due. The conclusion is bad; it concludes in bar of the action, whereas it should conclude in bar of the recovery of farther damages. 3 Steph. N. P. 2607. 1 Chit. Pl. 539. 3 Ib. 922.

The surrejoinder is sufficient. The plaintiffs were not bound, in this form and state of the pleadings, to aver that they demanded the precise sum tendered. The note described in the replication was a separate and independent cause of action. The plaintiffs had a right to demand payment of that, without the others, since they had not put the others in suit; and when demanded, it was the defendant's duty to pay. 1 Chit. Pl. 581. The plea does not allege, that the tender was upon this note, and the sum tendered does not correspond with the note. The plaintiffs had no right to demand the whole sum tendered, as there was not so much due upon the note.

The rebutter is insufficient; it sets forth two tenders, on two different occasions; the facts, if true, should have been given in evidence under a traverse of the demand and refusal; it does not answer what it purports to answer; it does not describe the " two other notes," nor aver, that they were notes held by the plaintiffs, nor due and owing to them.

The opinion of the court was delivered by

REDFIELD, J. The first question made in the present case is in regard to the validity of the defendant's note, given to the town for the price of the office of constable, which was set up at auction in open town meeting and sold to the highest bidder, the defendant, for $16,50, for which he gave the note in suit.

It is claimed, that this note is void, the consideration being illegal, or for the price of a thing, the sale of which the law will not countenance. In the absence of all statute law upon the subject, I should incline to the same view. I think, that the open and unblushing sale of offices, at public auction, is more detrimental to

public morals and public taste, and more subversive of the rights and liberty of the citizen, than when the same thing is accomplished in a more indirect and circuitous mode;—which will always be more or less the case, no doubt, in free governments. But we trust, that the open sale of offices, for a specified sum of money, told down, as the price of the bribe, will not soon become general. But if the legislature should pass a law, making all offices venal, from the lowest to the highest, it is not easy to say, that securities for the price would not be perfectly valid. So, too, if the legislature legalizes prostitution, gambling, or any other immorality, it is difficult to say, how the courts could pronounce the laws invalid upon any supposed ground of public policy, which would not equally subject all laws to the same ordeal, and virtually make the judiciary a co-ordinate branch of the legislature.

The validity of this note, then, depends upon the fair construction of the statute upon this subject,—Rev. St. 93, § 63,—which provides, that " The inhabitants of any town shall have liberty to agree " with some suitable person to fill the office of first constable, in " such method as they shall judge most advantageous, and such per- " son shall afterwards be chosen by the town." Here it is expressly provided, that the inhabitants of any town may make such bargain in regard to this office, as they shall deem most advantageous; the office may be sold, or bought. The mode of sale, then, whether at public auction, or not, is mere matter of convenience, or taste,— the essence of the thing is, whether the office may be sold, or farmed out. Upon this subject the statute is too explicit, and the practical construction has been too long and uniformly in favor of such a construction, to be now brought in question. And we think, the practice of putting the office up at public auction has not been without frequent and early precedents, in some sections of the state. And we see no objection to the mode. Every voter is to be esteemed competent to discharge the duties of any office, to which he can obtain an election; the only other requisite qualification for this office, under our statute, is, that he will give the highest price for the office. This will best be determined by bidding, and he must then be regularly instituted into the office, by an election,— which two things, paying the highest price, and getting the greatest

number of votes, estops every one from denying, that he is the most suitable person for the office.

We next have questions upon both sides, in regard to the correctness of the judgment rendered upon the report.

1. It is claimed, that the plaintiffs' exceptions are waived, because they were not filed within thirty days after the rising of the court, at which the judgment was rendered. But we think, the provision of the statute in regard to that matter has reference only to the final judgment in the case. It is obvious, that all the provisions of the statute can only apply to such a judgment,—for instance, that in regard to the clerk striking off the entry of exceptions, and issuing execution. The evil to be remedied under the former law, the releasing of bail and attachments by delay of entering exceptions, had no application to any interlocutory judgment. The statute was enacted chiefly, we think, to enable the party prevailing to have some certain rule, by which he might know, when he was entitled to execution. This has been so decided before by this court.

2. It is claimed, that all that portion of the account, which accrued subsequent to the bringing of the suit, cannot come into the plea of set off, because the statute provides, that no sum, not due and owing at the commencement of the suit, shall be pleaded in offset. But we think, this provision has reference to the subject matter of the plea, whether contract, or book account. If so due, that an action could be maintained upon it contemporaneously with the principal action, then it may be pleaded in offset. If none of the account were due, the plea must fail. But if any part were due, the plea is sustained, and the whole account must be adjusted, in the ordinary way, as is expressly provided. An account is an entire thing, and cannot be subdivided into parcels. The obligation is only to pay the balance; and if pleadable at all, it must be for the balance.

3. The items of account for keeping Mrs. Percival were correctly rejected. The auditor does not find any contract between the defendant and the overseer for pay for keeping this person. She was not an acknowledged pauper; and the facts reported show, that the overseer did not intend to so regard her. Perhaps he should have so regarded her; but we cannot go beyond the facts.

In regard to the plaintiffs' replication in offset, two general questions are raised;—1. In regard to the merits of that claim, upon the general facts, as they are disclosed upon the record;—2. As to the forms of the pleading.

The first is doubtless the more important inquiry. For as the facts seem to be admitted to be substantially set forth upon the record, whichever party fails in the substantial merits, upon this point, must ultimately fail in the suit, and be cast in the general costs of the litigation. As mere defects in the forms of pleading may always be amended upon terms, even in this court, unless in dilatory pleas, that question becomes of less ultimate importance.

1. Upon the question, whether the tender was sufficient, we think the case is with the defendant. I at first entertained doubts, whether it was competent to plead a gross sum to several demands, but no question of the kind is made in the argument; and in looking into the books upon pleading, and the precedents, I am satisfied the plea is good in this respect. In 3 Steph. N. P. 2601, it is said, a tender of a gross sum to several creditors, if they refuse it *generally*, is good. *Black* v. *Smith*, Peake 121. This may not be sound law; but the precedents all show, that a defendant may plead, generally, tender to several counts for different demands; and if so, he may surely *make* the tender in that mode.

2. There seems to be no question whatever, from the authorities, that a demand, to avoid the tender, must be of the precise sum tendered; and if of a different sum, the debtor is not bound to regard it.

As to the form of the plea of tender, we have entertained more doubt; but have not been able to find any defect, clearly fatal upon general demurrer. 1. The replication in offset is in two counts, substantially for the same cause, and would no doubt be so regarded, upon a question of jurisdiction before a justice, whether upon the point of the final or ultimate jurisdiction. 2. It seems to have been so regarded by the parties to this suit; as they have made no account whatever of the second count. 3. But if the counts were obviously for distinct and independent claims, a general plea of tender to the whole declaration is to be treated as a tender upon each count, and the debtor may, in proof, apply it to either count. PATTERSON, J., in *Robinson* v. *Ward et al.*, 8 Ad. & E., N. S., [55

E. C. L.,] 920, "If there were a general plea of tender to three special counts, the contract in each count would be admitted." *Bulwer* v. *Horne*, 4 B. & Ad. 132. *Douglass et al.* v. *Patrick*, 3 T. R. 683.

This disposes of the only serious question we have had,—whether the amount tendered was sufficient to cover the whole declaration. The other defects in the plea are, we think, merely formal, and not fatal upon general demurrer.

Judgment affirmed.