PIERRE A. BERTHOLD AND AMEDÉE BERTHOLD, Appellants, *v.* JULIETTE V. REYBURN *et al.*, Respondents.

1. *Contract—Payment—Tender.*—To make a tender of payment of money valid, as a general rule, the money must be *actually* produced and proffered unless the creditor expressly or impliedly waive its production. The creditor may not only waive the production of the money, but the actual possession of it in hand by the debtor. Nor is the debtor bound to count out the money if he has it and offers it, when the creditor refuses to receive it. A tender puts a stop to accruing damages or interest for delay in payment, and gives the defendant costs when sued for the debt.

2. *Payment—Tender—Demand.*—A party making a tender of payment, must be always ready to pay the amount tendered. To avoid the plea of tender by a subsequent demand, the creditor must show a demand of the precise sum tendered. The demand must be made of the debtor personally.

*Appeal from St. Louis Land Court.*

In this case, the petition set forth that on the 10th March, 1860, Pierre Berthold executed to Juliette V. Reyburn his promissory negotiable note for $7,000, and also six interest notes, each for $350—the first payable in three years after date, and the interest notes at intervals of six months, and all bearing interest after maturity at ten per cent. per annum; that, to secure the payment of these notes, Amedée Berthold executed a deed of trust, conveying certain land therein described to the trustee of Mrs. Reyburn; that all of the interest notes were paid, and also all accruing interest down to 10th March, 1864; that on the 5th of July, 1864, plaintiff tendered to the defendant, Juliette V. Reyburn, the amount of principal and interest then due on the said note for $7,000, being $7,233.35, in United States legal tender notes, which offer was refused, for the reason that defendant demanded and would receive gold only; that plaintiff has ever since remained and still is ready and willing to pay defendant said principal and interest so tendered, and now offers and asks leave to pay the same into court, in full discharge of said note and deed of trust. Plaintiffs further alleged that, since the tender aforesaid, defendant has never demanded the same; they therefore prayed judgment, &c.

The answer of Juliette V. Reyburn admitted the making of the deed and notes, and the payment of interest to the 10th of March, 1864, but denied the alleged tender on the 5th July, 1864, and denied that the plaintiffs have been since the 5th July, 1864, ready and willing to pay said money; stated that the principal sum of $7,000, and interest thereon, had been repeatedly demanded, to-wit, in February, 1865, and that payment was refused by said plaintiffs; and she asked the court to decree the payment to her of $7,000, and interest from 10th March, 1864; which being paid, she was ready and willing to release the mortgaged property.

The case was tried by the court, neither party requiring a jury, on the 19th December, 1865. By the bill of exceptions

it appears that the plaintiffs called as a witness R. A. Bakewell, who testified as follows:

"In the latter part of June, 1864, I was employed by Mr. Tesson, as agent of Mr. P. A. Berthold, to see Mrs. Juliette V. Reyburn and pay her the amount due on note dated 10th March, 1860, at three years, for $7,000, with ten per cent. interest from 10th March, 1864. Accordingly, 1 called to see Mrs. Reyburn at her house. She informed me that she had seen her attorney, Mr. Todd, and as he was of the opinion that she would have to receive U. S. notes in payment, and could not require gold, she had concluded to take it, and was willing to receive the amount in U. S. notes. Afterwards, on the 5th July, 1864, I went down to the banking-house of Tesson & Danjen to get the money, for the purpose of paying Mrs. Reyburn. Mr. Tesson took from the counter a money package in a letter envelope, marked on the back with figures. I took that package and was proceeding towards Mrs. Reyburn's house, and when on Olive street I met Mrs. Reyburn, and said to her, 'I am glad to meet you, madam. I have the money to pay Mr. Berthold's note, and I was going up to pay it.' She said, 'You need not put yourself to any trouble, Mr. Bakewell; for, since I saw you last, I have consulted with Mr. Gantt, and have been advised not to take the amount otherwise than in gold.' I said, 'Then it will still be necessary for me to see you at your house, for I must count out the money to you and offer it.' She said, 'It is not necessary to do so. I wont take it except in gold.' I said, 'You must excuse my being particular, Mrs. Reyburn, because there will probably be a suit here, and a technical question will arise.' I then produced the package, and said, 'Mrs. Reyburn, here is the amount due on that note in legal tender notes. You say you don't want me to count it.' She said she did not. I said, 'I now tender you the amount due on Mr. Berthold's note, in legal tender notes,' and I offered her the package. She said, 'I wont take it.' I said, 'Do you object to it because it is not the correct amount?' She said, 'No, I wont take it except

in gold.' I then said, 'Mrs. Reyburn, you object to receive this money only on the ground that it is not in gold, and for no other reason?' She said, 'Yes.' And then, after passing the usual compliments, we separated."

And on cross-examination, the witness said: "I never counted the money in the package, nor saw it counted, and cannot say of my own knowledge how many notes it contained, nor the amount of them. Between the 10th and 21st of February, 1865, Mrs. Reyburn's counsel called several times at the office of Mr. Farish, and left word for him that he wished to see him respecting the payment of the money due Mrs. Reyburn from Berthold. On the 5th of July, 1864, when I had the interview with Mrs. Reyburn, spoken of, gold was very high, perhaps as much as $150 premium, or $250 for $100 of gold. I think it was not so high then as it afterwards became. In February, 1865, it was lower, being about 70 or 80 premium, or $170 or $180 paper for $100 in gold. I do not know that the money market was stringent in February, 1865."

Plaintiff next called as as a witness Edward T. Farish, who testified as follows: "As the attorney for Mr. Berthold, after the tender spoken of by Mr. Bakewell, I commenced suit, similar to the present one, in the St. Louis Circuit Court; the defendant demurred for want of jurisdiction in the court. About the 8th of February, 1865, the demurrer was sustained. On the 10th of February, 1865, I met Mr. Gantt, who was defendant's counsel, in court, and the following conversation ensued between us: He asked me what I should do. I told him I should commence suit in the Land Court. He said, 'will you make a new tender?' I told him no, that one tender was sufficient. He then turned the conversation by inquiring if I had seen Mr. Shepley. About four o'clock in the afternoon of that day, Mr. Gantt came into my office (I was then actually engaged in re-writing the petition to commence suit in this court,) and said, 'You understood me this morning that we would take the money?' 'Yes,' I replied, 'I understood you that you would take the amount

tendered, with interest.' He then said, ' We will take the amount tendered.' I said, ' without interest ?' He assented, and said, ' Bear in mind the amount will now bear interest, or interest will now run on the amount tendered.' I told' him that I was very glad to understand him; that I had not so understood him in the morning.

"I immediately wrote to my client, Mr. Berthold, informing him that Mr. Gantt had agreed to take the sum of seven thousand two hundred and thirty-three dollars and thirty-five cents, the amount tendered on 5th July, 1864, and that interest would now run on the amount, at ten per cent. That evening, Mr. Berthold called to see me, and inquired if the amount should be paid at once. I told him no ; but that as the amount was now drawing interest, the sooner he paid it .the better.

" On the 21st of February, 1865, I met Mr. Gantt, and upon his inquiring about the money, I told him I would see to it. He then intimated that it not having been paid, they would claim interest from the start. I told him that the understanding was, that the amount tendered was to draw interest from February 10th, 1865 ; that neither I nor my client had understood the matter in the way he did.

" I immediately saw Mr. Berthold, went to Mr. Gantt's office, and what occurred is evidenced by a paper of which Mr. Gantt has the original ; which was thereupon read in evidence. It is as follows :

" ' Mr. Farish, this 21st day of February, 1865, at 2 P. M., handed me the check of Berthold & Thompson, of that date, numbered 317, on Tesson & Danjen, payable to the order of Bakewell & Farish, for seventy-two hundred and fifty-four 71-100 dollars ($7,254.71), and declared that the same was tendered in payment of a note for seven thousand dollars executed by Pierre A. Berthold to Juliette V. Reyburn, dated 10th March, 1860, at three years from date. On the part of Mrs. Reyburn I offered to take the check for the money tendered, at its face, on account of said note and interest from its maturity, but not in full payment thereof, and

Mr. Farish, declined to endorse and deliver the check upon such terms.

THOS. T. GANTT, for Mrs. J. V. Reyburn.

BAKEWELL & FARISH, for P. A. Berthold.'"

On cross-examination, witness said he had heard of Mrs. Reyburn's counsel calling to see him during his absence from his office, between 10th and 21st February, 1865, respecting this business.

This was all the evidence in the cause. The plaintiffs insisted, 1st. That the tender made the 5th July, 1864, was a good and valid tender. 2d. That tender puts a stop to accruing interest, and gives costs to the party making the tender. 3d. That to do away with the effect of the tender a demand must be made of the precise amount tendered; there must be a refusal to pay said demand; and that the pleadings and the proof showed no such demand and refusal.

The court dismissed the bill.

The defendant asked the court to reform the judgment, by decreeing foreclosure.

*Farish,* for appellants.

I. That the tender made July 5th, 1865, was a good and valid tender.

II. That tender before action brought puts a stop to accruing interest, and gives costs to the party making the tender.

III. That to do away with the effect of the tender, a demand must be made of the precise amount tendered, and there must be a refusal to pay said demand.

1. The words and action of respondent were a waiver of the actual opening of the package, and of all objections except to the specific character of the funds. The production and tender to respondent of what is admitted to have been a package of paper money, and of what was evidently legal tender notes, was a sufficient production of money to satisfy the requirements of law. "The actual production of the money is dispensed with by express declaration of the cred-

itor that he will not accept it, or by some equivalent act." This is the language of Chitty's note to Blackstone—III., 303, note 19. See authorities there cited. See also, Jackson v. Jacob, 5 Scott, 79; Blight v. Ashley, 1 Peters, C. C. 24; 3 Stephens Nisi-Prius, p. 2600; Read v. Goldring, 2 M. & S. ; 86; Finch v. Brook, 1 Scott, 70; Harding & Davis, 2 Carr. & P. 77; Gilmore v. Holt, 4 Pick. 258; Polglass v. Oliver, 2 C. & J. 15; Brown v. Saul, 4 Esp., N. P. C. 267; Nickenson v. Shee, 4 Esp. 4, 68; Black v. Smith, 1 Peake, 121; Barker v. Packinham, 2 Wash. C. C. R. 142.

2. To stop interest and give costs, the payment of the money into the court may be required when the tender is made after action brought; but not as in this case, where the tender is made before the suit is instituted—Stor. Cont. § 1001; Chit. Cont. 793; 2 Stark. Ev. 781; Dent v. Down, 3 Camp. 296.

3. Not only must there be a demand of the precise amount, but there must be a *refusal to pay*—Rivers v. Griffiths, 5 B. & Ald. 630; Shybey v. Hide, 1 Camp. 181; 22 Vt. 440; 2 Greenl. Ev. § 608; Coore v. Callaway, 1 Esp. 115.

The pleadings and the proof show no such demand and refusal. The answer alleges that the respondent demanded the amount of the note and interest, and the proof showed that so far from there being a refusal to pay the amount tendered, there was consent to do so, and an agreement that the amount was thereafter to bear interest at ten per cent., and subsequently there was no demand. There was an intimation on 21st February, that respondent would claim interest from the start, and thereupon appellant, in pursuance of agreement, offered to pay the amount tendered, with interest accrued since 10th February, 1865, to-wit, $7,254.71, in payment of the note. The respondent refused to accept it, except on account of the note and interest from maturity of same. To have paid it on these conditions imposed by the respondent herself would have been a solemn admission that appellant owed the amount of the note, and interest from

maturity of same; which was not true, for interest had been paid for one year after maturity of note, as admitted by the answer subsequently filed in the cause.

As a tender must be unconditional, so a demand is not only an admission that the precise amount is due, but is also an offer to accept the tender without conditions. Hence you cannot demand a larger amount than was tendered.

*T. T. Gantt*, for respondent.

Upon the statement agreed upon by the parties, and printed herewith, the respondent submits:

I. That whatever may have been the effect of an offer made in the street on July 5th, 1864, of a package of paper never counted by the witness, and of the contents of which he knows nothing, there was a new demand made on 10th February, 1865, and again on 21st February, 1865, neither of which was complied with, and this destroys the effect, if any, of the offer made in July previous—Coles v. Bell, 1 Camp. 478.

II. That the coupling of a condition with the offer to endorse and deliver to respondent's attorney on the 21st February, 1865, a check which plaintiff claimed to be for the full amount due—the condition being that the respondent would give a receipt in full on taking the check—and the refusal of the appellant to pay it unconditionally, vitiated all previous tenders, if they had been ever so numerous—Thayer v. Brackett, 12 Mass. 465; Eastland v. Langhorne, 1 Nott & McCord, 194; Hume v. Peploe, 8 East, 48; Glascott v. Day, 5 Esp. 48; Huxham v. Smith, 2 Camp. 21; Evans v. Judkins, 4 Camp. 156.

"The tender must be unconditional and unqualified, because if the creditor was to accept it, the claim for any residue might be thereby prejudiced; therefore a tender of a named sum, insisting at the same time on a receipt in full, or upon condition that it shall be received as the full balance due, or as a settlement, or that a particular document shall be delivered up to be cancelled, is insufficient"—1 Chit. Gen.

Pract. 508, citing 2 Camp. 21, 4 Camp. 156, and 4 Carr. & Payne, 237. This usually careful writer has here been betrayed into an inaccurate or loose expression. To make his statement correct, he should have said: "The tender must be unconditional and unqualified, because if the creditor were to accept a sum of money with condition or qualification, the claim for any other or different sum might be thereby prejudiced."

The respondent submits that the law as here laid down is decisive of the present controversy. Every thing else—all that had taken place prior to 21st February, 1865—may be laid out of view. Then, at any rate, it was understood that the respondent was willing to receive treasury notes for the amount due on the note she held of appellants, and there was a controversy as to how much was due. Instead of making this tender, he offered to pay a certain sum on conditions—and refused to pay it, or any thing else, otherwise. This is only saying that he refused either to pay or to tender anything.

III. A plea of tender ought to show that defendant has always been ready from the date of tender to pay, &c.—3 Chit. Pl. p. 955 & seq.; id. 1020-1. And to a plea of tender plaintiff may reply a subsequent demand and refusal—1 Camp. 181; 3 Chit. Pl. 1155. Of course all these *allegata* must be supported by corresponding *probata*. But in this case the testimony shows (omitting all view of the merits of the tender in July, 1864,) a failure or delay from 10th to 21st February, 1865—and this defeats all the effects of the affair on the street of July 5th, 1864, whatever these may have been. The written memorandum signed by both parties, showing the occurrences of the 21st February, 1865, renders it unnecessary to consider any other part of the testimony. Appellant owed money—it was his duty to ascertain the amount and pay or tender it; that is, he should pay it if his creditor would receive it, or he should *tender* it if his creditor would not allow him to pay it—*tender* it without any condition or limitation. As between the creditor and debtor,

it is the business of the debtor to move first. He owes a debt —he should pay it. Having done this, he can call on his creditor to give a quittance or release, if the law requires the creditor to give such a thing. Now, our law (2 Rev. Co. 1855, § 21 & 22, pp. 1091–2) does in certain cases, of which the case at bar is one, require of the mortgagee to give such a release. But need I detain the court by insisting that the first thing to be done is to pay the debt, and *then* call on the mortgagee to release the security? Appellant refused to pay it except on condition that respondent would waive her claim for anything more, and that puts an end, summarily and decisively, to all that had been previously said and done in the name of tender.

WAGNER, Judge, delivered the opinion of the court.

That the tender made on the 5th day of July, 1864, by the plaintiffs' agent to the defendant was good, is not seriously questioned in this case. As a general rule, to make a tender of money valid, the money must be actually produced and proffered, unless the creditor expressly or impliedly waives this production; and the creditor may not only waive the actual production of the money, but the actual possession of it in hand by the debtor—2 Pars. Cont. 642, 5th ed. Nor is the debtor bound to count out the money, if he has it and offers it when the creditor refuses to receive it—Wheeler v. Knapp, 8 Ohio, 169; Breed v. Hurd, 6 Pick. 356.

A tender puts a stop to accruing damages or interest for delay in payment, and gives the defendant costs—Coit v. Houston, 3 Johns. Cas. 243; Cornell v. Green, 10 S. & R. 14; Law v. Jackson, 9 Cow. 641. Here the plaintiffs were willing and ready to pay the amount, produced the money and tendered it in U. S. notes; but the defendant refused to receive it, and the only objection made was that she would receive nothing but gold.

A plea of tender, to be effective, must show that defendant has always been willing and ready to pay the amount from the date of tender. The plaintiff may avoid the plea of

tender by showing a subsequent demand and refusal, but to have this effect he must show that the demand made was of the precise sum tendered, a variance being fatal—2 Greenl. Ev. § 608; Spreyberg v. Hide, 1 Campb. 181; Tlutford v. Hubbard, 22 Vt. 440; Dixon v. Clark, 5 Com. Bench, 378; Haskell v. Fawcett, 11 Mees. & W. 356. Now, the first question is, did the assent of defendant's attorney, on the 10th day of February, 1865, amount to such a demand, and the failure to pay immediately, to such a refusal, as to avoid and do away with the previous tender?

The evidence of demand is not satisfactory. The only testimony is that of Mr. Farish, the plaintiffs' attorney, who states that about four o'clock in the afternoon of that day (10th February), Mr. Gantt (defendant's attorney) came into his office and said, "You understood me, this morning, that we would take that money?" "Yes," I replied; "I understood you would take that amount, with interest." He then said, "We will take the amount tendered." I said, "without interest?" He assented, and said, "Bear in mind, the amount will now bear interest; or, interest will now run on the amount tendered." I told him that I was "very glad to understand him; that I had not so understood him in the morning." He then testified that he immediately wrote to plaintiffs, informing them that defendant had agreed to take the amount tendered in July, 1864, and that interest would run from the date of the agreement; that plaintiffs came to see him, and inquired if the money should be paid at once, and he replied in the negative, but said, as the amount was drawing interest, the sooner it was paid the better. On the 21st of February he again met Mr. Gantt, who inquired about the money, and he then intimated, that, it not having been paid, they would claim interest from the start; to which witness replied, that the understanding was, that it should draw interest from the 10th of February. On the same day on which this conversation took place, he procured a check for the precise amount tendered, and went to Mr. Gantt's office and tendered it to him in payment of the

debt. Mr. Gantt offered to take the check for the money tendered, at its face, on account of the note and interest from maturity, but not in full payment, and the witness declined to endorse and deliver the check upon such terms. It would be giving great latitude to the meaning of language to construe the conversation and mutual understanding between the attorneys into such a demand as would avoid the tender. It appears they had two interviews before they understood each other as to the acceptance of the amount, and then it was agreed that interest should run thereafter till final payment. There was an assent and an intimation that it would be received; but the law requires a demand and a refusal of the precise sum tendered, and we would dislike to lay it down as an established rule that there was a sufficient compliance with these requirements in this case.

But there is another objection; the demand, if any, was made of the attorney, and not of the debtor. A tender may be made by an agent, or to an agent, where he is authorized to receive the money; but a demand ought to be made personally of the debtor, in order that he may have an opportunity of paying the money demanded—Edwards v. Yeates, Ry. & Mood. 360; Coles v. Bell, 1 Campb. 478, n.

Nothing being shown sufficient to avoid or destroy the effect of the tender, and the plaintiffs being entitled to the relief they ask in their petition, the judgment will be reversed and the cause remanded. The other judges concur.

A motion for re-hearing was filed by respondent, and was overruled.