## STEWART v. HENRY COUNTY.

(Circuit Court, W. D. Missouri, W. D. February 11, 1895.)

1. NOTICE—MATURITY OF BONDS.

The county of H., in Missouri, issued bonds on July 1, 1882, running for 20 years, with the option reserved to the county, as stated on the face of the bonds, to pay off the same at any time after July 1, 1887. No method of giving notice of such election was expressly provided in the bonds. Interest was payable annually on July 1st, and was regularly paid up to July 1, 1887, when the county, by an order regularly entered of record in the county court, elected to pay the bonds on September 1, 1887, with interest to that date. Notices of such election, stating that the bonds would be paid at the place of payment named on their face, were published in a local newspaper, and in newspapers of large circulation in St. Louis and New York City. On the date fixed, the money required for payment of the bonds and interest was ready at the place of payment, and all but a very small amount of the bonds were presented and paid. *Held,* that the county performed its obligation to the holders of the bonds by the method adopted to give notice of its election, and that personal notice to the bondholders was not required in order to stop the running of interest, after the date fixed for payment.

2. PLEADING—TENDER.

If payor is ready at time and place of payment with the money to pay, he may plead the fact, not in defense of action, but in avoidance of subsequent interest and costs, when he pays money into court. To enable plaintiff to avail himself of objection of failure to pay sum tendered on demand, he must set up the fact specifically in replication.

This is an action to recover on three bonds, and the interest coupons belonging thereto, issued by the defendant county. The principal of the bonds aggregates $2,500. The bonds were issued on the 1st day of July, 1882, under what is known as the "Statute for Funding Debts of Counties and Municipalities in the State of Missouri." The interest on said bonds was represented by coupons attached thereto, payable the 1st day of July each year. The bonds run for 20 years, with the option reserved to the county to pay off the same at any time after the 1st day of July, 1887. The interest on these bonds was promptly paid by the county up to the 1st day of July, 1887; at which time the county court, by appropriate order, declared its election to pay off said bonds on the 1st day of September, 1887. Accordingly it caused formal notice of this fact, reciting the series of bonds outstanding, to be published in weekly issues, up to the 1st of September, 1887, of its leading local newspaper of the county, and in the St. Louis Republic, and in the New York World, notifying the holders of said bonds that on that day, September 1, 1887, the interest thereon would cease, and that the bonds would be paid either at the National Bank of Commerce in the city of New York, or at the office of William C. Little Bond Company, in the city of St. Louis, Mo., as the respective

holders thereof might elect. The county, through said Little, arranged for the placing of sufficient money at said bank, in the city of New York, for the redemption of said bonds; and all indebtedness of the county, amounting to $419,000, was accordingly paid as of date September 1, 1887, by said bank or said bond company, with the exception of the bonds in controversy in this suit. The contention of plaintiff is that he did not have actual notice of the call so made by the county for the redemption of said bonds until in August, 1888, and that the published notice was not sufficient in law; and therefore he refused to accept the amount due on the 1st day of September, 1887, in satisfaction of his claim. He brought this suit on February 6, 1891, to recover both the principal and interest up to the day of judgment. The defendant's answer pleads the facts respecting said call; that it was ready and willing to pay the amount due on the 1st day of September, 1887, at said bank of Commerce, and the failure of plaintiff to have his bonds and coupons then and there for payment; and in its answer it renews the said tender, and it paid the money into this court for the benefit of plaintiff, where it has since remained on deposit.

Karnes, Holmes & Krauthoff, for plaintiff.
Fyke, Yates & Fyke and Jos. Parks & Sons, for defendant.

PHILIPS, District Judge. The statute under which the bonds in question were issued does not provide in terms for the redemption at the end of five years, nor prescribe any method therefor: though it does prescribe that no bond under the act shall be issued to run for a longer period than twenty years, nor less than five years. It was, however, competent for the county, in issuing the bonds, to reserve the right to make them payable at the end of five years after their issue, at its option. This it did, and this fact is expressed on the face of the bond, and the purchaser took subject thereto. After such recitation as to the statute under which, and the purpose for which, the bond was issued, it concludes with this provision: "But this bond is payable at any time after the 1st day of July, 1887, at the option of said county." The preceding part of the bond recites that the county "promises to pay bearer, at the National Bank of Commerce in the city of New York and state of New York, on the 1st day of July, 1902, with interest at the rate of six per centum per annum, payable at said bank, upon presentation and delivery of the coupons for said interest hereto attached on the 1st day of July of each year." Then follows immediately the provision above quoted, respecting the option to pay at any time after July 1, 1887. Clearly enough, then, it appears that the place of payment under either provision is the National Bank of Commerce in the city of New York. This admits not of debate. Unquestionably, upon the maturity of any coupons or the bonds under the first part of the obligation, should the county have on deposit at said bank the money to pay the same, it would have been the duty of the holder of the bond to present it there for

payment, and interest would cease thereon from that date, unless the defendant had failed to make its tender good on demand. Ward v. Smith, 7 Wall. 447–453.

The remaining question is, did the county perform its obligation to the holder of any such bond by declaring its option to pay on the 1st day of September, 1887, and publishing notice thereof in the manner in which it did, and having the money in readiness at said bank to meet the payment of any bond and interest that might be presented for payment at said place? or does the contract contemplate that in addition the county should have given personal notice of its election to the holder of said bonds and coupons? It is true, as suggested by plaintiff, the county could have provided in the bond for notice, and how it should be given. On the other hand, it seems to me, the defendant might with equal, if not greater, force reply that the plaintiff took the bond with full knowledge of the fact that the right was reserved to the defendant county, at any time after July 1, 1887, to elect to pay; and, inasmuch as he took the bond when issued without exacting any specification respecting notice, it does not come with grace for him afterwards to demand, without any notice to the county, that he would expect it to notify him, or, without keeping it advised that he was the holder of any such bonds, to claim that he should have his interest until such time as he had actual notice of the election made by the county. In construing a contract regard must be had always to the circumstances under which it was made, to the subject-matter, as well as the reasonable and customary method of its performance. The plaintiff knew when he took the bonds that they were subject to the provision respecting the option. He knew that such bonds possessed all the qualities of commercial paper on their face payable to bearer, and as such passed freely from hand to hand by mere delivery, and entered into all the channels of trade and commerce, like inland bills of exchange. How, then, was it possible for the defendant to know, when it made its election to pay, who held this or that particular bond and the coupons? Personal notice in such case would be practically impossible. The county might possibly have ascertained from the bank, where the payment of coupons was usually made, who presented the same at the last payment. But that would furnish no evidence as to who held the bond, as the coupons might be severed therefrom, or who held the remaining coupons. He who held the bond at the time of the payment of interest might not hold it to-morrow. So that, if notice were served on the holder of the coupon last paid, he could answer that he had parted with the bond and any other coupon held by him; and it would be practically impossible for the county to get at the real facts or the real holder. Under such construction of the contract, the county would absolutely be at the mercy of the commercial winds. Such a construction would be so unreasonable and impractical that the court should hesitate to adopt it, if there is any other more reasonable, natural, and equitable construction to both parties. County courts, under the state statute, are courts of record.

As such, all their acts and doings are made matters of record. The election made by the county to exercise the option given in this case was made matter of record in the county court. Plaintiff was advised by the bond in his hand that he held subject to such election, liable to be made at any time after the 1st day of July, 1887. It was more feasible and reasonable for him to have kept himself in communication with the clerk of the court, than to exact that the court should seek him out. Again, the place of payment being designated on the face of the bond, the law is that, if the obligor places the funds necessary for payment with a designated bank at the time for payment, it is the duty of the payee to call at the bank and make demand there. Ward v. Smith, 7 Wall. 450, 451. The plaintiff had two plain courses open to him to ascertain whether or not the county exercised the option, and to guard himself against the possibility of loss of interest, by either making direct inquiry of the clerk of the county court or any local correspondent, or by leaving his bonds and coupons at the bank in New York. One or the other was so easy and expenseless to him, while to require that the county should seek out an unknown holder of such commercial paper, not yet due, transferable from hand to hand by mere delivery, and give personal notice of its election to pay, is so extreme and impracticable as to repel the construction insisted upon by the plaintiff. As the evidence in this case shows, at, or shortly after, the time of the publication of said notice by the county, the plaintiff was not even at his customary place of abode in the state of Maine, but was out in the state of California, from whence he returned, by way of St. Louis, in the summer of 1888. Ordinary prudence and duty to his debtor dictated that he should have left his bonds and coupons with the bank in New York, where he had customarily collected his coupons, and where his debt would have been paid on the 1st day of September, 1887, had he so elected. As observed by the court in Ward v. Smith, supra:

"It is the general usage in such cases for the holders of the instrument to lodge it with the bank for collection, and the party bound for its payment can call there and take it up. If the instrument be not there lodged, and the obligor is there at its maturity with the necessary funds to pay it, he so far satisfies the contract that he cannot be made responsible for any future damages, either as costs of suit or interest for delay."

In the absence of any express provision in the bond for giving notice, the county took the only practicable course open to it, which a spirit of fairness and justice to the bondholders would dictate. It made publication of the order of the court in its home newspaper, of large circulation; in the St. Louis Republic, published at the commercial metropolis of the state, having a wide circulation; and in the New York World, published at the city of New York, where the bonds were payable, and the commercial center of the United States. As proof of its effectiveness, the evidence in this case shows that all of the bonds, amounting to $419,000, with the single exception of the $2,500 held by the plaintiff, were presented and paid at the places designated in the notice, over $70,000 of which were paid at

the designated bank in the city of New York.    The evidence shows that this form of bond, with a like provision respecting the option to pay, was common in municipal bonds of this state issued under the funding act of 1879; and that the method pursued in this case, in giving notice of the call, was practiced generally under such bonds.    William C. Little, who has handled such bonds to the extent of $1,000,000, testifies that that was the method adopted and pursued successfully; and such has been the observation of this court, obtained from litigation on similar bonds in this jurisdiction.    This practice, under the funding act of 1879, has so universally obtained as to almost, if it does not, constitute a usage.    As evidence that such method accords with the public view as to the only practicable method of imparting notice of such calls, the act of Congress (section 3697, Rev. St. U. S.), providing for the redemption of the 6 per cent. bonds of the government of 1865, prescribes that "a public notice be given by the secretary of the treasury, and in three months after the date of such public notice, the interest on the bonds so selected and advertised to be paid shall cease."    The method of giving such public notice by the department is by advertisement in newspapers selected by it.    That was merely an act providing for redemption in contradistinction from a payment.    Morgan v. U. S., 113 U. S. 477, 5 Sup. Ct. 588.    The contract of the bond here provides for payment at the option of the county after a stated period, which put the holder on the qui vive, and imposed something more on him than to pocket his bonds in a distant state, and wait to be run down to be served with personal notice.

The plaintiff, in his testimony and instructions, pro se, makes question as to whether there was a sufficient tender made by the county at the New York bank, September 1, 1887.    I find this issue of fact for the defendant.    The evidence shows that Mr. Little, bond broker of St. Louis, contracted with the defendant county to take up said outstanding bonds in consideration of the county issuing to him bonds at a lower rate of interest, which the county did.    Little arranged on behalf of the county, through the La Clede Bank of St. Louis, to have the National Bank of Commerce of New York pay off such bonds of the county under the call as should be there presented. To this the New York bank consented, and accordingly it paid off all such bonds so presented, including principal and interest up to the 1st day of September, 1887, and was ready and willing to pay all that might be presented.    Its cashier testifies that the bank would have paid the principal and interest of the plaintiff's bonds up to that date had they been presented.    The evidence further shows that the bank was ready and willing to pay the plaintiff the principal and interest of his bonds as late as October, 1888, up to September 1, 1887, had he been willing to accept the same.    And the evidence further shows that Mr. Little, on meeting the plaintiff in St. Louis in the summer of 1888, on his return east from the state of California, offered likewise, under his contract with the county, to pay the interest and principal of his bonds up to September 1, 1887.    The plaintiff declined to do so, unless he received interest up to July 1, 1888.    He made no question of the bank or

Little to so pay, but it is too manifest to admit of question that he placed his refusal to accept, and turn over his bonds and coupons, unless he received interest up to July, 1888, on the ground that he did not have actual notice of the call.    Under such circumstances, it was not necessary that the money should have been counted out and physically tendered him.

Outside of the issues made in the pleadings, his final contention is that when he went to the bank in New York in October, 1888, he expressed a willingness to its cashier, or other officer, to accept from the bank the principal of his bonds, and to withhold the coupons of interest unless the bank would pay thereon up to July, 1888; thereupon he had the bonds protested.    As shown by the deposition of the bank officer, and as the plaintiff unquestionably understood it, this refusal of the bank to pay the bonds without the coupons was based solely upon the ground that it had no power of attorney from the county to pay one without the other.    In other words, it was not authorized to halve or subdivide its agency by taking up one and leaving the other outstanding.    Of course, if it could be regarded as a demand on the defendant, the case in this particular would stand differently had the coupons represented other bonds than those held by the plaintiff.    But the coupons belonged to the bonds owned by the plaintiff.    It would be the merest jugglery to say that, by severing the coupons from the bonds held by the plaintiff, he acquired any greater right than if they had remained physically attached to the bond.    The coupons, though detached from the bond, represented the interest thereon, and, as such, were an integral part of the bond, as much so in the plaintiff's hands as if written in the face of the bond.  Howard v. Bates Co., 43 Fed. 276.    A reference to some well-settled principles of law and pleading will demonstrate that the plaintiff's contention in this connection is most lame.    Where a note is made payable at a designated place, it is the duty of the payor to be in readiness at the designated time and place to meet the debt, and it is the duty of the payee to have his note at the designated place so it may be paid. If the payor be so ready with the money, and the payee fail to present his note, the payor may plead the fact as he would a tender; and when sued he may bring the money into court, not to defeat the action, but in bar of interest and costs.    Then, to avoid such plea, the plaintiff may reply and prove a subsequent demand and refusal. But the demand, to be available to the plaintiff, must be of the precise sum tendered.    The plaintiff in this case did not demand the precise sum in effect tendered on the 1st day of September, 1887, but demanded more.    But his replication in this case is wholly insufficient to let in the proof, if any there had been, in avoidance of the plea of tender.    His replication is simply a general denial,—a tender of the general issue,—which puts in issue only the fact of the defendant being in readiness to pay the money at the designated bank, September 1, 1887; whereas the rule of pleading is that he should plead the facts constituting the avoidance.    Berthold v. Reyburn, 37 Mo. 586; Mahan v. Waters, 60 Mo. 167.    Again, the demand, when made, must be of the debtor.    "A tender may be

made by an agent, or to an agent, where he is authorized to receive the money; but a demand ought to be made personally of the debtor, in order that he may have an opportunity of paying the money demanded." Berthold v. Reyburn, 37 Mo. 597, and citations. This the plaintiff never did. The defendant's evidence is that it was at all times ready and willing to discharge the plaintiff's bonds and coupons at any time from the 1st day of September, 1887, either at said bank, or at its county treasurer's office; and it has kept on deposit in this court, since it made answer in this suit, the sum to make good said tender. Had the plaintiff, when the bank at New York declined to pay him the money, unless he would accept the principal and interest up to September 1, 1887, and surrender his bonds and coupons, then gone to the county court with his demand, it is not improbable that the whole matter could then have been amicably adjusted, and this vexatious litigation avoided. Believing that the justice and the merits of the case are with the defendant, I find the issues accordingly for the defendant. Judgment will go for plaintiff for the principal and interest on bonds to September 1, 1887, costs adjudged against plaintiff.