# Kerr *versus* City of Corry.

1. Municipal coupon bonds payable to bearer are quasi negotiable in certain particulars, viz., they pass by delivery; the holder may sue in his own name; the transferee for value holds title as an original obligee; he cannot be affected by equities between the previous holders and the municipality of which he had no notice; neither can he be affected by the default of the officers issuing them, unless such default directly affects their power to make and put them on the market.

2. Diamond *v.* Lawrence Co., 1 Wright, 353, commented on, distinguished, and an extension of its doctrine refused.

3. A municipal corporation desiring to aid a manufacturing establishment gave to the manufacturers a certificate of indebtedness, and subsequently procured the passage of an Act of Assembly authorizing it to issue bonds to pay off its indebtedness only. It then issued bonds in pursuance of the Act of Assembly which it gave to the manufacturers in exchange for the certificate of indebtedness. These bonds stated on their face that they were issued "in pursuance of an Act of Assembly, approved March 27, 1873, and by action of the Common Council and authorities of the city of Corry." Some of these bonds having subsequently come into the hands of a bona fide purchaser for value, without

[Kerr *v.* Corry.

notice of the circumstances attending their issue, in a suit by him against the city on his bonds: *Held,* that the city could not set up as a defence the fact that the manner in which the bonds had been issued was substantially an evasion of the Act of Assembly, and the plaintiff was entitled to recover.

February 5, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Erie county:* Of January Term, 1884, No. 266.

Assumpsit, by James B. Kerr against the city of Corry, upon certain unpaid interest coupons accrued on bonds of said city. Plea, non-assumpsit, with leave, etc.

The case was tried before E. L. Whittlesey, Esq., as "legal arbitrator," under the provisions of the Act of April 6, 1870, applicable to the counties of Erie, Elk, Crawford and Lawrence (P. L., 948; Purd. Dig., pp. 80, 81). On the trial the facts were shown to be as follows:

In 1873 the municipal authorities of the city of Corry in order to aid the growth of the city, determined to extend aid to certain parties who were willing to carry on extensive manufacturing enterprises within it. The principal enterprise intended to be thus aided was the machine shop of Gibbs, Sterrett & Co., who agreed in consideration of $80,000 of city bonds to remove their works from Nunda, N. Y., to Corry, and to give employment to 175 hands. The charter of Corry, however (P. L., 1866, p. 784), provided that the indebtedness of the city could only be increased two per cent. upon the last assessment, and the supplement to the charter passed in 1868 (P. L. 323), required that the amount borrowed in any one year should not exceed $3,000. It was therefore resolved by the city councils that certificates of indebtedness be issued running not more than thirty days from date of issue in favor of Gibbs, Sterrett & Co., to the amount of $80,000, and placed to order of the council in trust for said parties, and certificates of indebtedness to be replaced at maturity by city bonds of the city of Corry running not less than ten years nor more than twenty years. The contract for the removal of their shops was executed and delivered by Gibbs, Sterrett & Co., simultaneously with this certificate of indebtedness, and was dated March 24, 1873. There was no money or other consideration paid to the city for said certificate, and it was not indebted to Gibbs, Sterrett & Co., except according to the terms of its contract with them. In order to enable the city to issue bonds and thus take up this certificate of indebtedness, the Act of March 27, 1873 (P. L., 434), was passed at the solicitation of the city councils.

This Act provides that " the common council of said city be and it hereby is authorized to issue bonds of said city, to the amount of one hundred and twenty-five thousand dollars, to be signed by the mayor, city clerk and treasurer, and attested by the seal of said city; said bonds to run not less than ten, or more than twenty, years from the date thereof, and to bear interest at the rate of eight per cent. per annum, payable semi-annually on the first days of April and October of each year; that said council be and it hereby is authorized and directed to levy, assess and collect one half of one per cent. per annum upon the assessed valuation of all the trades, occupations and property, real and personal, in said city; and that the money so levied and assessed, when collected, shall be paid into the treasury of said city, and shall constitute a fund for the payment of the interest accruing on such of said bonds as may from time to time be issued, and for the payment of the principal of said bonds at the maturity thereof; and that the fund arising from such levy and assessment shall be applied to no other or different purpose whatever.

" SECTION 2.—That said city be and hereby is authorized and directed to sell from time to time so many of said bonds as may be necessary to pay off, satisfy and discharge the indebtedness of said city, due or to become due, within five years from the date hereof; and that said bonds and the proceeds thereof shall be used for no other or different purpose whatever."

In compliance with the terms of the contract aforesaid the officers of the city of Corry issued $80,000 of bonds with interest at eight per cent. per annum, payable semi-annually on surrender of coupons attached thereto. These bonds were in the following form:

No. 1, State of Pennsylvania, $1,000, issued in pursuance of an Act of Assembly approved March 27, 1873, and by action of the common council and authorities of the city of Corry; city of Corry bond. The city of Corry by these presents acknowledges itself indebted to the bearer in the sum of $1,000 lawful money of the United States of America, which sum of money the said city promises to pay ten years from the date hereof at the office of the Farmers' Loan and Trust Co., in the city of New York with interest thereon at the rate of eight per cent. per annum, payable semi-annually on the first days of April and October, on the presentation and surrender of the annexed coupons at the above mentioned place as they severally become due. In witness whereof the said city have caused to be affixed thereto its corporate seal and these presents

[Kerr v. Corry.]

to be signed by its mayor and treasurer this first day of April
A. D. 1873.

(Seal of city of Corry.)
  (Signed,)      A. F. KENT, Mayor.
            A. W. HECKER, Treas.
            J. B. BROWN, Clerk.

The coupons attached were in the following form, and num-
bered from one to twenty, viz:

$40.    STATE OF PENNSYLVANIA.    $40.

The city of Corry will pay the bearer hereof $40, lawful
currency of the United States, at the office of the Farmers
Loan and Trust Company, in the city of New York, on the
first day of October, 1873, being six months' interest on bond.
     Signed,      A. F. KENT, Mayor.

Which bonds were on the 25th day of June, A. D. 1873,
delivered to W. B. Sterrett and F. W. Andrews, representing
the contracting parties; $60,000 to F. W. Andrews and
$20,000 to W. B. Sterrett by agreement between the parties
receiving said bonds.

Upon the delivery of the bonds above mentioned, the certi-
ficate of indebtedness aforesaid was surrendered and cancelled
and it was the only consideration for the execution and deliv-
ery of the bonds.

On March 16, 1873, the assessed value of the city of Corry
amounted to $1,862,180, and the indebtedness on the same
date amounted to $89,903.31. James B. Kerr, the plaintiff,
bought from F. W. Andrews, between October 1, 1873, and
April 1, 1874, some $7,800 of these bonds with their coupons
attached. The purchase was made bona fide for valuable con-
sideration, without notice from whom or how Andrews
obtained the bonds, and without knowledge of the facts con-
nected with their issue. The city of Corry having made
default in the payment of the interest coupons attached to the
bonds owned by him, he brought this suit to recover the
amount thereof.

The arbitrator reported that " having arrived at the conclu-
sion that the bonds in question are void for want of power in
the officers of the city to issue them in aid of a private enter-
prise, contrary to the Constitution of Pennsylvania, of which
the plaintiff was bound to take notice, and that this want of
power can be shown in this action on the coupons, even if the
plaintiff was a *bona fide* holder for value, before maturity,
without notice of such defence, it necessarily follows that the
plaintiff cannot recover, and the award must be for the
defendant."

[Kerr *v.* Corry.]

Exceptions filed by the plaintiff to this report were dismissed by the court, GALBRAITH, P. J., filing the following opinion:

"There was no indebtedness of the city of Corry to Gibbs, Sterrett & Co., and the issuing of the certificate of indebtedness in their favor was a mere gift, for the purpose, evidently, of creating an apparent indebtedness to support the issuing to them of a like amount of bonds under the authority of the Act of Assembly then pending, and which became a law three days afterward. By the express terms of this Act the bonds authorized by it, or the proceeds of their sale, were to be used for the purpose of paying the debt of the city of Corry, and for no other purpose whatever. The certificate issued to Gibbs, Sterrett & Co. did not represent a debt, but was a mere pretence or semblance of a debt invented for the purpose of supporting the like amount in bonds intended to be issued afterward in aid of a private enterprise in which the city had no share of ownership. The transaction was therefore on its face a perversion and violation of the Act of Assembly under which it purported to be done. It was in violation also of the seventh section of article eleven of the Constitution of Pennsylvania then in force, and reiterated in section seven of article ninth of the Constitution of 1874, which provides that "the legislature shall not authorize any county, city, borough, township, or incorporated district, by virtue of a vote of its citizens, or otherwise, to become a stockholder in any company, association or corporation, or to obtain money for or loan its credit to any corporation, association, institution or party.

It is conceded that in the hands of the original parties who received the bonds from the officers of the city, and who knew that they were issued in violation of law, they would be void; but it is contended that, as the plaintiff is a *bona fide* holder, without notice, he cannot be prejudiced by the facts stated, and of which he admittedly had no knowledge. And this brings us to what is really the only question in this case, namely, have these bonds such character and quality of negotiability as to make them valid in the hands of an innocent purchaser without notice? This question has been settled by the Supreme Court of our own state in the case of Diamond *v.* Lawrence County, 37 Pa. St. Rep., 353. That was a suit to recover the amount of a coupon accompanying a bond issued by the county to the Northwestern Railroad Company in part payment of the county subscription to the stock of the company, which bond and coupons the company transferred to a contractor for work done on their road, and by several successive transfers they came into the hands of the plaintiff for a valuable consideration. The pleadings and proof showed

irregularities in the making of the subscription, and improper conduct on the part of the directors of the company in the use made of the bonds, but it was contended there, as here, that the bonds and coupons were negotiable instruments, and that the defence set up must be excluded as against a *bona fide* holder for a valuable consideration, without notice of the defects and irregularities alleged. . . . . .

It has been insisted by counsel for plaintiff here that as it was for the councils of Corry to decide what debts were to be paid with these bonds or the proceeds of their sale under the Act of Assembly, their decision must be held to be final and conclusive, and that the city is now estopped from going behind or questioning such action. To hold this doctrine would be practically to nullify the wholesome provision of the Constitution of Pennsylvania, which in express terms prohibits the very thing that was done by the authorities of the city of Corry in this case. The object of the constitutional amendment by which such loans of credit were peremptorily prohibited, was to prevent irresponsible majorities from voting onerous incumbrances and burdensome taxation upon the helpless minorities, the property owners of cities, towns, counties and other municipalities. But if the doctrine be held that the action of councils or other municipal authorities cannot be questioned, and that having issued bonds such as are here in controversy, their action is conclusive, and the municipality estopped from interposing a defence, such as that set up here, it is easy to see that the constitutional provision would be rendered practically worthless as against a majority who could easily elect councils or other governing officers, who would have as little regard for the prohibitory section in the Constitution as was shown by the councils and mayor of the city of Corry in this transaction.

The practical result of the ruling of our Supreme Court is entirely just. It holds, on the one hand, that the purchaser of such securities is not to take them blindly and without inquiry, but that he should ascertain for himself their validity before paying his money; and, on the other hand, it avoids the wrong of permitting a municipal corporation to set up a mere technical defence to defeat a just claim for money of which such municipality has had the benefit. In the case of Diamond v. Lawrence County, referred to, the county was required to pay only what was actually received by the railroad for the bonds sold and for which bonds the county received certificates of stock in the Northwestern Railroad Co., the corporation to which the bonds were issued. In this case there was no actual debt, and nothing whatever given for the bonds of the city. It was a gift merely to aid individuals in a purely private

business enterprise in which the city had no ownership or property interest whatever. The whole transaction was in violation of law, and of this the plaintiff could readily have informed himself had he taken the trouble to have inquired. He chose to take the risk and pay his money for these, so called, securities which never had any validity, and which cannot, under the ruling of the Supreme Court, be enforced by him any more than they could by the parties to whom they were originally·issued.

"After a very careful examination and review of the whole case, I am entirely satisfied of the correctness and justice of the conclusion the legal arbitrator has reached, and accordingly the exceptions filed on part of the plaintiff are overruled, and the finding and award of legal arbitrator are affirmed."

Whereupon plaintiff took this writ of error, assigning for error this action of the court in dismissing his exceptions filed to the report of the legal arbitrator, and in not entering judgment for the plaintiff for the amount of the coupons in suit, with interest thereon at seven per cent.

*M. Crosby* and *F. B. Guthrie* (with whom was *Julius Byles*), for the plaintiff in error.—As the city had power to issue the bonds, a *bona fide* holder for value has a good title to them, and can' recover against the city without regard to whether the city obtained full value for them, or whether the purchase money was. misappropriated. The holder is not obliged to look beyond the bond and the Act of Assembly. For the city is estopped by its own representation from saying that the bonds were not issued or used for corporate or municipal purposes. Hackett *v.* Ottawa, 99 U. S., 86; Supervisors *v.* Schenck, 5 Wall., 772; Knox County *v.* Aspinwall, 21 How., 542; Woods *v.* Lawrence Co., 1 Black, 386; Coloma *v.* Eaves, 2 Otto, 484; Commonwealth *v.* Pittsburgh, 34 Pa. St., 496; Commonwealth *v.* Allegheny, 37 Pa. St., 237; Mercer County *v.* Hackett, 1 Wall., 83; St. Joseph Township *v.* Rogers, 16 Wall., 644; Venice *v.* Murdock, 2 Otto, 494; Moultrie *v.* Savings Bank, 2 Otto, 631; Humboldt *v.* Long, 15 Otto, 642; Marcy *v.* Oswego, 2 Otto, 637; Thomson *v.* Lee County, 3 Wall., 327; Commissioner *v.* Bolles, 4 Otto, 104; Daviess *v.* Huidekoper, 8 Otto, 100. When a corporation has power, under any circumstances, to issue negotiable securities, the *bona fide* holder has a right to presume they were issued under the circumstances which give the requisite authority, and they are no more liable to be impeached for any infirmity in the hands of such a holder than other commercial paper. Gelpcke *v.* City of Dubuque, 1 Wall., 203; Meyer *v.* Muscatine, 1 Wall., 384; Allegheny City *v.* Mc-

Clurkan, 14 Pa. St., 81; County of Warren *v.* Marcy, 7 Otto, 96. The bonds in question are negotiable, and carry with them all the essential elements of commercial paper. The elaborate effort of the learned court below to make them appear otherwise, seems to be based chiefly on the case of Diamond *v.* Lawrence County, 37 Pa. St., 353—a case which has been criticised and not wholly followed by this court, and which, it would seem, has been wholly overthrown and rendered obsolete by a more recent case, Mercer County *v.* Hackett, 1 Wall., 83. An important distinction exists between the provision of the Act of Assembly in this case and that in the cases of Parkersburg *v.* Brown, 16 Otto, 487; Loan Association *v.* Topeka, 20 Wall., 655; Marsh *v.* Fulton County, 10 Wall., 677; and Harshman *v.* Bates County, 2 Otto, 569. In our case the legislature authorize the issue of bonds for a strictly legitimate purpose, that is, for the payment of debts. In Parkersburg *v.* Brown, the authority was to issue bonds for the purpose of lending the same to individuals engaged in manufacturing—a purpose directly in violation of the Constitution. A purchaser of such bonds, referring on their face to such legislation, would of course be charged with notice of their unconstitutionality, and could not reasonably hope to recover on them. It will not avail to say that in the case under consideration the bonds were appropriated to a similar purpose, not contemplated by the legislature. With the appropriation the purchaser has nothing whatever to do. He looks only for proper authority to issue for a lawful purpose, and, finding it, he must be protected.

*Davenport,* (with whom were *Griffith* and *A. F. Bole*), for the defendant in error.

The Act of Assembly under which these bonds were issued provided explicitly "that said city be and it hereby is authorized and directed to sell from time to time, so many of said bonds as may be necessary to pay off, satisfy and discharge the indebtedness of said city, due or to become due within five years of date hereof." Therefore, in no other way could these bonds be legally put upon the market than by selling. It is an imperative requirement, and the bonds, having never been sold, have never been legally issued, and have never had any legal existence. The bonds bear notice on their face of this Act of Assembly and of the ordinance of the city council. The plaintiff should have read both and having neglected his plain duty does not stand in the position of an innocent holder. Mc Clure *v.* Oxford Township, 94 U. S., 429; Ogden *v.* Daviess County, 102 U. S., 634; St. Joseph Township *v.* Rogers, 16 Wallace, 644; Loan Association *v.* Topeka, 20

9 OUTERBRIDGE.—19.

Wallace, 655; Parkersburg *v.* Brown, 106 U. S., 487; Williamsport *v.* Commonwealth, 3 Norris, 501; 1 Dillon Municipal Corporations, 472; Hood *v.* Lynn, 1 Allen, 103; Burroughs on Public Securities, 319. The proceedings of council authorizing the issue of bonds were unconstitutional and therefore void under § 7, art. 12 of Constitution as amended in 1857 prohibiting the legislature from authorizing a municipality to "loan its credit" to any corporation, association, institution or party. This was distinctly a loan of credit: Pennsylvania R. R. *v.* Philadelphia, 11 Wright, 189; Erie's Appeal, 91 Pa. St., 398; Williamsport *v.* Commonwealth, 84 Pa. St., 487; Armstrong Co. *v.* Brinton, 11 Wright, 371; Pearce *v.* Madison & Indianapolis R. R., 21 How., 443; Hood *v.* Lynn, 1 Allen, 104; Marsh *v.* Fulton Co., 10 Wallace, 676; Anthony *v.* Jasper County, 101 U. S., 697. Hackett *v.* Ottawa, 99 U. S., 86, does not apply as the Constitution of Illinois art. 9, § 2 gives greater power to the municipalities of that state. The same criticism applies to Supervisors *v.* Schenck, 5 Wallace, 772. The bonds being issued in violation of the Constitutional restrictions on the power of the Legislature they are absolutely void and there can be no innocent holder of them, and the city is able to interpose the plea of *ultra vires*: Hood *v.* Lynn, 1 Allen, 104; 8 Am. Law Reg., 693; 6 Am. Law Reg., N. S., 146; Peterson *v.* New York, 17 N. Y., 452; Daviess *v.* Huidekoper, 98 U. S., 98. The payment of some of the coupons does not amount to a waiver of this defence: Parkersburg *v.* Brown, 106 U. S., 487; Keen *v.* Coleman, 3 Wright, 302; City of Scranton *v.* Vail et al., 25 Pitts L. J., 75; Marsh *v.* Fulton Co., 10 Wallace, 677; Thomas *v.* Town Lansing, 14 Fed. Rep., 625; Monument National Bank *v.* Globe Works, 101 Mass., 58; Marsh *v.* Fulton Co., 10 Wallace, 684; Floyd Acceptances, 7 Wallace 682; Clemens on Corporate Securities, 76; Weightman *v.* Clark, 103 U. S., 256; Railroad Co. *v.* Co. Otoe, 16 Wallace, 667; Thomson *v.* Lee Co., 3 Wallace, 327; Co. of Moultrie *v.* Rockingham Ten-Cent Savings Bank, 92 U. S. Rep., 631.

Municipal bonds in Pennsylvania are not negotiable and the plaintiff stands in no better position than his vendor who received them from the city. Diamond *v.* Lawrence Co., 1 Wright, 353; affirmed in Armstrong Co. *v.* Brinton, 11 Wright, 371.

Mr. Justice GORDON delivered the opinion of the court February 25, 1884.

It does not seem to be disputed but that the plaintiff, James B. Kerr, the owner of the bonds upon the coupons of which, or some of them, this suit has been brought, is a bona fide

holder for value, and that he was, at the time of his purchase, without notice of the defence now set up by the city. These bonds, with their coupons, were in the ordinary negotiable form, payable to bearer, signed by the mayor, treasurer, and clerk of the city, and sealed with its seal. In the body of these obligations we find the statement that they were issued in pursuance of the Act of the 27th of March, 1873, and of the action of the common council and authorities of the city of Corry. About the facts here stated there is no serious dispute, nor do I understand that the power of the municipality to issue this paper is called in question. Indeed, it would be useless so to do, for the Act above recited leaves no room for hesitation; by it the power is clearly conferred, and had these bonds, when issued, been applied to the lawful indebtedness of the city, as in said Act directed, there could be no room for controversy. It is, therefore, manifest that the labored argument on which the legal arbitrator bases his conclusion comes to nothing. If, indeed, his premise were correct, the rectitude of his conclusion could not be questioned. If the council of the city of Corry had no power to issue the bonds in controversy, then, without regard to their form, they would be as worthless as so much blank paper, and the operative legal principle here involved applies as well to a natural person, and private corporation, as to a municipality. If one receives the negotiable paper of another purporting to have been executed by an agent, it is not enough to show that it came to hand in the regular course of business, and that the holder gave a valuable consideration for it, for these are of no avail unless it be first shown that the alleged agent had authority to execute it. If, however, it be made to appear that he possessed such power, then may the innocent holder recover, though the paper was, in fact, issued in fraud of the principal's right, and for a purpose not intended.

But the question we have to deal with is not one of power, but rather, as the learned judge of the court below has put it, the effect of the perversion of a lawful power by the application of the bonds to an unlawful purpose. The mayor and council had no power to bind the city by the certificate of indebtedness issued to Gibbs, Sterrett & Co., on the 24th of March, 1873; the city owed this firm nothing, and its credit could not be thus loaned, hence, the exchange of bonds for this certificate was a void act; it was a mere gift of these valuable securities to Gibbs, Sterrett & Co., and in their hands they were no better, as evidences of indebtedness against the municipality, than was the original certificate for which they had been exchanged. The contest here, however, is not with the original holders of these bonds, but with an innocent pur-

[*Kerr v. Corry.*]

chaser, who in good faith.took them, depending upon the representation, appearing on the face of each and every one of them, that they and their coupons, when due, would be paid to the bearer.

It follows, that the material inquiry involved in this case is, was the plaintiff bound not only to inform himself, through the Act of Assembly, of the power of the city authorities to issue the bonds, but did he take them charged with all the equities to which they were subject when in the hands of the first holders? In other words, do they occupy no other relation to the commercial community than do ordinary specialties, and have they in them no element of negotiability? In the court below these questions, on the authority of Diamond *v.* Lawrence County, 1 Wr., 353, were answered adversely to the plaintiff, and the bonds were held to be nothing more than ordinary specialties, against which any defence might be set up which the city had against Gibbs, Sterrett & Co.

But we cannot agree that the case cited supports the judgment of the court below. The coupon there sued upon was from a bond which, with others, had been issued by the County of Lawrence and passed to the Northwest Railroad Company, in payment of the county's subscription to the stock of that company. On the 5th of June, 1857, and before the railroad company had transferred the bond, afterwards held by Diamond, a bill was filed by the county against the company to prevent a transfer of the bonds, and compel a surrender of them for cancellation. On that bill a decree was made as prayed for, on the ground that there had been a direct violation, by the corporation, of the Act of Assembly in selling the bonds for sixty-four cents on the dollar. Under these circumstances, Diamond having received a transfer of his bond pending the bill, it was held that he was bound to take notice of the suit then in progress; in other words, the case was disposed of on the doctrine of *lis pendens*, and the assertion found in the opinion that bonds of this character are not to be regarded as negotiable securities, must be taken to mean only that they are not to be treated as paper of that strictly commercial character which relieves its holder from the effects of the doctrine of *lis pendens*. If we were compelled to interpret this opinion as did the court below, we would reject it altogether, for thus interpreted it is not law in this commonwealth nor anywhere else. This decision, even when applied as it was intended, is not satisfactory, since it puts us, as a court, into this anomalous condition, that by it we are made to antagonize the sentiment of the commercial world, and the doctrine of every other court, whether in this country or England. It has been repudiated by the Supreme

Court of the United States, and held not to be the law of Pennsylvania. Mercer County v. Hacket, 1 Wallace, 83. Under these circumstances we will not agree to carry the doctrine of this case a single step beyond the facts upon which it is based; nor are we willing to positively commit ourselves even to this extent, for in so doing we must necessarily overrule the case of Beaver County v. Armstrong, 8 Wr., 63, in which we held that municipal bonds and coupons are negotiable securities.   But returning to the case in hand, we cannot see wherein it differs materially from that of the Commonwealth v. The Commissioners of Allegheny County, 1 Wr., 237, wherein those commissioners were peremptorily ordered to provide for the payment of the coupons of bonds issued to a railroad company, and, like those in the case of Diamond v. Lawrence County, were, by that company, in defiance of the Act of Assembly, sold below par.   Here the very same learned Justice, who delivered the opinion in the Lawrence county case, says that the making of the bonds on their face payable to the company or bearer, was, of itself, sufficient to authorize their transfer; that this was a direction, in precise language, that the bonds should be transferable on delivery, like bank notes or bills of exchange.   And all this seemed to him so clear, that he alleges he never before heard it doubted, and probably never should again.   So, also, the very same idea was expressed in the previous case of the Commonwealth v. The same Commissioners, 8 Casey, 218, as it was in the Commonwealth v. Pittsburgh, 10 Id., 496, and Carr v. Le Fevre, 3 Id., 413.   Taking the cases here cited as exponents of the doctrine entertained ·by this court, concerning municipal bonds, and we may summarize it as follows:   They have, at least, a quasi negotiability in these particulars; they pass by delivery, and the holder may sue in his own name; the transferee for value holds title as an original obligee; he cannot be affected by equities existing between the previous holders and the municipality, of which he had no notice, neither can he be affected by the default of the officers issuing them, unless such default directly affects their power to make and put them upon the market.

The judgment is reversed, and a procedendo awarded.

Subsequently, on October 27, 1884, on motion of the plaintiff, the court ordered that judgment be entered for the plaintiff, to be liquidated by the prothonotary of the Court of Common Pleas, of the county of Erie, in the amount of the several coupons found due the plaintiff by the legal arbitrator, with interest on the same at the rate of seven per cent.

per annum, from the time they severally became payable until the date of the entry of the judgment, with costs of suit.