The Fulton National Bank of Lancaster, Pa.,
Appellant, *v.* The City of Lancaster, Pa.

Argued November 14, 1933.

Before TREXLER, P. J.,
KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER
and JAMES, JJ.

*G. T. Hambright*, and with him *John E. Malone*, for
appellant.

*Wm. B. Arnold,* Assistant City Solicitor, and with him *H. Edgar Sherts,* City Solicitor, for appellee.

OPINION BY PARKER, J., April 16, 1934:

This is an action in assumpsit brought to recover the amount of two interest coupons attached to a municipal bond. As the facts are not in dispute, the question involved is a legal one and is whether the plaintiff bank, the holder of these coupons, or the City of Lancaster, defendant, shall bear the loss of interest occasioned by a theft of a bond with coupons attached.

On October 1, 1906, the defendant, a city of the third class, issued certain municipal bonds maturing October 1, 1936. Each of the bonds contained the following provision: "The city of Lancaster reserves the right to redeem said bonds at any time after twenty years and within thirty years." In October and September, 1926, the city controller and the city clerk inserted a notice in three newspapers of general circulation, published in the city of Lancaster, four insertions in two newspapers and three in the third, directed to the bond owners and advising them that the city of Lancaster called for redemption on October 1, 1926, bonds Nos. 1 to 10, inclusive, of the issue in question for $1,000 each and that interest would cease on that date. There was not any action of council recorded in its minutes directing the bonds to be called, but subsequently the ten bonds were presented for redemption and paid with interest by the city. Bond No. 2, which is the one here involved, was received by the city and placed in a safe belonging to the city without any cancellation or mutilation of either the bond or coupons. About December 24, 1927, the city clerk, who had access to the safe, stole the bond and coupons, took them to the appellant bank and pledged them as collateral for a loan of $900, stating at that time to the cashier

of the bank that "he had a chance to buy a Lancaster City Bond very cheap and would like to borrow some money on it." From 1927 until October, 1929, the city clerk was permitted to clip the coupons from the bond and pay the interest due on his obligation to the bank, thus concealing the theft. Thereafter he defaulted in his interest and the bank presented coupons due April 1 and October 1, 1930, to the city of Lancaster for payment. Payment having been refused, this suit was brought. At the trial of the case binding instructions were given in favor of the defendant, and the court refused plaintiff's motion for judgment n. o. v. Judgment was accordingly entered for the defendant, and this appeal was taken. As this suit involves only the coupons representing semi-annual installments of interest, we shall confine our attention to the rights and duties of the parties with relation to these coupons, not intending to express any opinion with respect to the title to the principal of the bond.

Municipal bonds are treated in this state as quasi-negotiable instruments having many of the attributes of true negotiable instruments. They pass by delivery and the holder may sue in his own name; he is not ordinarily affected by equities existing between the previous holders and the municipality: Kerr v. City of Corry, 105 Pa. 282, 293; Mason v. Frick, 105 Pa. 162, 167. The same is true with reference to coupons attached to bonds: County of Beaver v. Armstrong, 44 Pa. 63. Municipal bonds have, however, some peculiarities not applicable to ordinary commercial paper and are treated as a separate subject in the various textbooks dealing therewith.

The city availed itself of the privilege of calling the bond and having interest cease by giving public notice to that effect. While the action authorizing such notice was informal, it was ratified by the actual payment of the bond and by making an entry upon the

bond register and the books of the city showing that such bond had been redeemed. Even though the officer did not have authority to give such notice, the city ratified such action by redeeming and paying for the bond. It is well settled in Pennsylvania that "a municipal corporation may ratify the unauthorized acts and contracts of its agents or officers, which are within the corporate power, and that such ratification need not necessarily be by resolution or ordinance but may be implied from the acceptance of the work": Hamilton Avenue, 48 Pa. Superior Ct. 156. All question, however, as to the sufficiency of the notice or the authority to give it disappears in the face of the fact that the then holder of this bond not only had actual notice that the city had exercised its option to call the bond, but the bond was presented for redemption and the indebtedness was actually paid and discharged by the municipality.

When the bank was offered this bond as security, the coupons were attached to the bond, and as a purchaser of the coupons it was charged with knowledge of the contents of the bond and the provision permitting redemption: McClure v. Township of Oxford, 94 U. S. 429, 433; 44 C. J. 1243. The bank having become a purchaser of the bond after the time had arrived when it was subject to redemption, the duty was cast upon such purchaser to ascertain whether interest had ceased. It was in a position similar to one who purchases a negotiable instrument after maturity. The bank took the bond with notice that the city had the right to redeem, a condition attached to the obligation, and it therefore became incumbent upon the purchaser to ascertain whether that option had been exercised.

It has been suggested that this conclusion places a burden on the holders of municipal securities which would greatly reduce their value. The answer is that

the purchaser took the bond with full knowledge of a condition attached to the obligation. We are here concerned only with the question of interest and not with the title to the principal of the bonds. We note in passing that it has been held by the Supreme Court of the United States, in Morgan v. United States, 113 U. S. 476, that the principal of a municipal bond, as distinguished from the interest represented by coupons, does not lose its negotiability in the period between the time fixed for redemption and a determined date when the bond must be paid.

We will consider some of the consequences that would result from sustaining the contention of the appellant. Assume the case of a bond containing a provision for redemption such as exists in this case, that the municipality gave due and ample notice that interest would cease on a certain day when the bonds would be redeemed, and that the holder received actual notice of such election and, in place of presenting the bond for redemption, sold it to a stranger in a distant city who had no notice of the exercise of the option to redeem. Then, if the position of the appellant is correct, such purchaser could defeat and render nugatory a condition attached to the obligation itself. As we have indicated, the question here is not whether an innocent holder in due course is affected with notice that an instrument had been stolen, but is whether such a condition as was contained in this bond is of binding force and effect. We believe that it is. The condition was not an unusual one, for the books are filled with cases showing that government and municipal obligations containing such provisions are frequently issued. The bank having failed to ascertain or inquire of the city whether this bond had been called for redemption must bear the loss of interest.

Judgment affirmed.