Rittenhouse, Appellant, *v.* Lukens Steel Company.

Argued September 26, 1934.

Before Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Victor R. Bieber,* and with him *Harvey McCourt,* for appellant.

*Charles E. Kenworthey,* and with him *Francis H. Scheetz,* of *Evans, Bayard & Frick,* for appellee.

OPINION BY PARKER, J., February 1, 1935:

This action in assumpsit was brought to recover the amount of forty-five coupons representing a semiannual installment of interest due on that same number of bonds secured by a corporation mortgage and comes to us on an appeal from an order of the court below discharging plaintiff's rule for judgment for want of a sufficient affidavit of defense. The defense is that the plaintiff is precluded from an action at this time by certain provisions contained in the mortgage, and to this plaintiff replies that he is not bound by the conditions in the mortgage and that if he were, the provisions referred to do not defeat his right to maintain this action. As the facts are all set forth in the amended statement of claim and the amended affidavit of defense, we have pure questions of law for consideration.

In December, 1932, plaintiff acquired forty-five bonds of the defendant company to which the coupons in question were attached. Default having been made in the payment of the interest when due, this suit was brought. The coupons were in the following form: "$40.00. On the first day of November, 1932 unless the bond hereinafter mentioned shall have been called for previous redemption, LUKENS STEEL COMPANY will pay to bearer at the office of the Bankers Trust Company, trustee, in the borough of Manhattan, City of New York, Forty Dollars ($40.00) United

States gold coin, without deduction for normal Federal income Tax not exceeding two percent or Pennsylvania State Tax not exceeding four mills, being six months interest then due on its first mortgage twenty year eight per cent. Gold Bond No. M4798. Jos. Humpton, Treasurer.''

The bond recited the mortgage or trust indenture and stated that the bonds were issued ''in pursuance of, and all equally secured by'' an indenture of mortgage described, and then added: ''To which Indenture reference is hereby made for a statement of the property mortgaged and pledged, of the nature and extent of the security and of the terms and conditions upon which this bond is issued, to all the terms and provisions of which Indenture the holder or registered owner hereof consents by the acceptance hereof.'' The mortgage or deed of trust, in turn, contained the following provision: ''No holder of any First Mortgage Bond or Coupon shall have any right to institute any suit, action or proceeding in equity or at law for the payment of such bond or coupon or for the foreclosure of this Indenture, or for the execution of any trust hereunder, or for the appointment of a receiver, or for any other remedy hereunder, unless such holder previously shall have given to Trustee written notice of some event of default and of the continuance thereof, as hereinbefore provided nor unless, also, the holders of twenty-five per cent in amount of the First Mortgage Bonds then outstanding, shall have made written request upon Trustee after its right to exercise such powers, or right of action as the case may be, shall have accrued and shall have afforded to it a reasonable opportunity either to proceed to exercise the powers hereinbefore granted, or to institute such action, suit or proceeding in its own name; nor, unless, also, they shall have offered to Trustee adequate security and indemnity against the costs, expenses and liabilities to

be incurred therein or thereby; and such notification, request and offer of indemnity are hereby declared in every such case, at the option of Trustee, to be conditions precedent to the execution of any of the powers and trusts of this Indenture and to any action or cause of action for foreclosing or for the appointment of a receiver or for any other remedy hereunder; it being understood and intended that no one or more holders of First Mortgage Bonds and coupons shall have any right in any manner whatever by his or their action to affect, disturb or prejudice the lien of this Indenture, or to enforce any right hereunder, except in the manner herein provided, and that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the equal benefit of all holders of such outstanding Bonds and coupons.''

The plaintiff first contends that the indenture of mortgage and bonds cannot be resorted to for the purpose of qualifying, limiting, or explaining an unconditional promise to pay contained in the coupon. This question not only does not appear to have been raised in the court below, but counsel appear to have agreed to the contrary. The court below, in an opinion disposing of the rule, said: ''Counsel have agreed that the provisions of the mortgage are written into the bonds and coupons by reference, so that we need not cite reason or authority for so holding.'' This statement is unchallenged in appellant's brief. We might therefore dismiss this contention, for it would be unfair to convict a trial court of error on a proposition not brought to its attention: McLaughlin v. Monaghan, 290 Pa. 74, 79, 138 A. 79. However, we are of the opinion that, regardless of the agreement, the law was correctly stated. When the plaintiff purchased the bonds, the coupons in question were attached thereto, and he was charged with knowledge of the

contents of the bonds and the provisions contained therein: Fulton Nat. Bank v. City of Lancaster, 112 Pa. Superior Ct. 565, 568, 172 A. 34; McClure v. Twp. of Oxford, 94 U. S. 429, 433; 44 C. J. 1243. The reference in the bonds to the mortgage is explicit. The bonds refer to the mortgage for the terms and conditions upon which the bond was issued, and then provide: "To all the terms and provisions of which indenture the holder or registered owner hereof consents by the acceptance hereof." There is abundant authority in support of this proposition: Home Mortgage Co. v. Ramsey, 49 Fed. (2nd) 738; Allan v. Moline Plow Co., 14 Fed. (2nd) 912, 915; 8 C. J. 196; 3 R. C. L. 870; McClelland v. Norfolk Southern R. Co., 110 N. Y. 469, 1 L. R. A. 299, 18 N. E. 237.

Is the holder of these coupons entitled to a judgment, notwithstanding the conditions contained in the mortgage? Counsel for the appellant suggests that even though he had a general judgment, execution might be restrained as to the property actually mortgaged. The section of the mortgage recited above provides not only that there shall be no foreclosure of the mortgage, but that no holder of a bond or coupon shall have the right to institute any action in law or equity for the payment of the bond or coupon unless (1) there is a default, (2) there is a written notice of the default given to the trustee, (3) the holders of twenty-five per cent in amount of outstanding bonds make request on the trustee to proceed, and (4) they indemnify the trustee for costs and expenses. The affidavit of defense alleges that none of these conditions was complied with. There is a later provision that all proceedings at law or in equity shall be carried on "for the equal benefit of all holders of such outstanding bonds and coupons." The section indicates by express language that the limitations imposed on the right to maintain an action for default are intended

to extend to all actions of any kind and are not limited to proceedings to obtain the benefit of the collateral security afforded by the mortgage. It also indicates a definite purpose that all remedies shall be enforced in the interest of the holders of bonds as a class. These express provisions distinguish this case from the cases cited by appellant.

The language employed is clear and free from ambiguity. When parties competent to contract execute an agreement that is not in violation of the law, they should be held to it. At the time the plaintiff purchased this bond, he assented in express words to the stipulations contained in the mortgage and he must abide by that agreement.

As the court below suggests, the appellant in effect contends that the contract does not mean what it says and argues that the bond holders are only interested in protecting the mortgaged premises. We assume that appellant insists on a right to seize cash, accounts receivable, or other assets not bound by the mortgage. To do this might militate against the interests of the bond holders as a class to as great an extent as if he took a part of the physical plant to secure payment of coupons. There is a value in the plant as a going concern that is just as real as the real estate or other physical property. The parties agreed that this value should be conserved in the interest of the bond holders as a class and should not be interfered with except at the instance of twenty-five per cent of the holders of outstanding bonds.

In Allan v. Moline Plow Co., 14 Fed. (2nd) 912, the holder of a note of the Illinois Company, described in a contemporaneous trust agreement containing provisions analogous to those in the present case, attempted to maintain an action on the note contrary to the provisions of the agreement. The remarks of the court in that case are pertinent (p. 916): "The limi-

tations in the trust agreement on the right of note holders to sue are not inconsistent with the promise of the Illinois Company to pay. They do not prohibit action against the Illinois Company for the enforcement of the notes, but they protect against action by less than 25 per cent of the note holders which the other note holders believe would be disadvantageous to the note holders as a class. These provisions were not written into the trust agreement for the benefit and protection of the Illinois Company, but for the benefit and protection of the note holders. They, in effect, provide that, if the Illinois Company shall fail to pay the notes, not less than 25 per cent in amount of the note holders shall determine upon a course of action which will best subserve the interest of the note holders as a class. These provisions, therefore, do not in any wise limit the liability of the Illinois Company to pay, but they restrict the method of enforcing payment in the event of default.''

The limitations in the mortgage subjected the action to be taken by a bond holder to the will of twenty-five per cent of the bond holders and insured such a course of action with respect to all the property of the debtor in the interest of the bond holders as a class. The individual bond holder is prevented from pursuing an individual course of action, harassing the common debtor, and jeopardizing the corporate property intended for the common benefit of all. If the plaintiff were permitted to tie up the quick assets of the corporation, the ability of the corporation to carry on its business would be destroyed. This his written agreement does not permit him to do: Batchelder v. Council Grove Water Co., 131 N. Y. 42, 29 N. E. 801.

While we have not been able to find any decision by the appellate courts of this state directly in point, nor has our attention been called to any such by counsel, the weight of authority in the federal courts and

other states is in favor of the contention of the appellee: Home Mortgage Co. v. Ramsey, supra; Boley v. L. S. E. R. R. Co., 64 Ill. App. 305; Allan v. Moline Plow Co., supra; Crosthwaite v. Moline Plow Co., 298 Fed. 466; Lidgerwood v. Hale & Kilburn Corp., 47 Fed. (2nd) 318; Babbitt v. Read, 236 Fed. 42.

We are all of the opinion that plaintiff was not entitled to a summary judgment.

The order of the court below discharging the rule for judgment for want of a sufficient affidavit of defense is affirmed.