Philadelphia Saving Fund Society, Appellant, v. Bethlehem.

450

Argued December 10, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Charles J. Biddle,* with him *Edward J. Fox, Jr.,* of *Fox & Fox,* for appellant.

*Daniel L. McCarthy,* City Solicitor, for appellee.

OPINION BY HIRT, J., January 30, 1941:

In 1912 the Borough of South Bethlehem by ordinance provided for the issue and sale of Street Paving Bonds in the amount of $42,000. The bonds were issued in denominations of $1,000 each and were sold to the highest bidder, Charles C. Harrison Jr. & Company of Philadelphia on August 5, 1912. That company on November 1, 1912 resold the entire issue to plaintiff without notice to the Borough. The bonds were due and payable on October 1, 1942 but by their terms were "redeemable and payable at the office of said Borough on and after the first day of October 1927, *at the pleasure of the Borough."* (Emphasis added.) They were all coupon bonds payable to bearer and contained no provision for registration of ownership. In July, 1917 the Borough of South Bethlehem and the Borough of Bethlehem merged into a city of the third class, thereafter known as City of Bethlehem, which assumed and then became liable for the obligations of each of the merged boroughs, including the bonds in question. On May 6, 1938 the City of Bethlehem by resolution duly adopted, called this entire issue of 4½% Street Paving Bonds of the Borough of South Bethlehem for redemption on June 1, 1938, with accrued interest to that date. As directed by the resolution, defendant's City Clerk caused a notice of redemption to be published in the Philadelphia Record, a Philadelphia newspaper of wide circulation, on May 24, 1938, and in the Bethlehem Globe Times, a newspaper of general circulation in the City of Bethlehem, for three successive weeks, the last of which appeared on May 27, 1938. Plaintiff did not have actual notice of the call of the bonds until September 24, 1938 but shortly thereafter tendered them with the coupons attached, to the city demanding payment of principal and interest in full to that date. This was refused but later when this action was brought, the entire principal with interest to June 1, 1938, the call date, was

paid to plaintiff under a stipulation that payment was received by plaintiff without prejudice. The action proceeded for the collection of interest from June 1, 1938 to the date of actual notice of the call. The jury found for the defendant; plaintiff's rules for a new trial and for judgment n. o. v. were discharged and judgment was entered on the verdict. Plaintiff's appeal followed.

On the trial, two questions were submitted to the jury: (1) Whether the city knew that plaintiff society was the owner of the bonds and (2) whether advertisement in two newspapers as made by the city gave reasonable notice to plaintiff of the call, relieving the city from the liability for interest after the redemption date. Only the first was a question of fact for the jury. The second question was one of law and the jury should have been instructed relative to the legal efficacy of the notice by advertisement, as applied to its finding of knowledge of ownership or lack of it. Where facts are admitted or established, the question whether the notice was reasonable and sufficient is one of law for the court. *Vilsack v. Wilson,* 269 Pa. 77, 112 A. 17; *Brenzer v. Wightman,* 7 W. & S. 264.

At the trial plaintiff offered in evidence admissions of defendant contained in a stipulation of counsel which had been presented to the court in the nature of a case stated. The court had found the stipulation inadequate for the purpose and disposition of the case by that method was abandoned by the parties. On the trial of this case the court properly refused the offer of these admissions in evidence. "An agreement to a case stated may be rescinded either by tacit or express consent: the abandonment of it is satisfactorily evinced by the parties subsequently pleading to issue; and when thus abandoned, it is not evidence which may be given to the jury upon the trial of the cause": *McLughan v. Bovard,* 4 Watts 308; *Hart's Appeal,* 8 Pa. 32; *Gibson v. Rowland,* 35 Pa. Superior Ct. 158.

Though the assignments of error question the suf-

ficiency of notice of the call and the weight of the evidence, at the argument of this appeal plaintiff stressed the inadequacy of the charge of the court. That the charge was inadequate must be conceded but the difficulty confronting plaintiff on this phase of its argument is the fact that no exception was taken to the charge of the court. In the absence of a general exception, the errors now complained of cannot be reviewed even though they had been assigned as error, *(Curtis v. Winston,* 186 Pa. 492, 40 A. 786; *McConnell v. Penna. R. R. Co.,* 206 Pa. 370, 55 A. 1029; *Lindsay v. Dutton,* 227 Pa. 208, 75 A. 1096; *Foley v. Phila. R. T. Co.,* 240 Pa. 169, 87 A. 289; *Hirsch v. Hubert Trans. & Stor. Co.,* 136 Pa. Superior Ct. 605, 8 A. 2d 426) unless the errors are so basic and fundamental as to require the granting of a new trial. *Patterson v. Pittsburgh Rys. Co.,* 322 Pa. 125, 185 A. 283; *Williams v. Lumbermen's Ins. Co.,* 332 Pa. 1, 1 A. 2d 658; *Finkelstein et ux. v. McClain,* 331 Pa. 198, 200 A. 596.

Giving the defendant the benefit of the most favorable inferences from the testimony, plaintiff is not entitled to judgment notwithstanding the verdict and on our view of the case a new trial cannot be granted on the record before us on the ground of fundamental error.

A municipality about to borrow money may fix the terms of its promise to pay, and a provision for payment before maturity is common to many issues of municipal bonds. Such reservation is in the public interest and should be so construed. *Henry Shenk Co. v. Erie Co. et al.,* 319 Pa. 100, 178 A. 662. The bonds in question by their terms were redeemable "at the pleasure of the Borough." A purchaser of a bond is charged with knowledge of its contents and is bound by its terms. *Rittenhouse v. Lukens Steel Co.,* 116 Pa. Superior Ct. 303, 176 A. 543; *Fulton Natl. Bk. v. City of Lancaster,* 112 Pa. Superior Ct. 565, 172 A. 34; *McClure v. Township of Oxford,* 94 U. S. 429. The bonds

are silent as to the method of redemption and this appeal squarely raises the question as to how the privilege may be exercised, having due regard for the rights of the city and of the purchasers of the bonds. No Pennsylvania authority directly in point has been brought to our attention.

The nature and legal incidents of the bonds have some bearing on the question. The securities were coupon bonds payable to bearer; title passed by delivery and they were not registerable. They had many of the qualities of negotiable instruments. *Mershon v. Millerstown Bor.,* 128 Pa. Superior Ct. 248, 193 A. 328. For this reason we cannot agree with the contention that in the absence of a statute allowing constructive notice, actual notice must be given by a municipality retiring bonds before maturity, in order to stop interest; that contention has been referred to as being in accord with the apparent weight of authority. 30 Am. Jur., Interest, §52 and cases there cited. *Hinds County v. National L. Ins. Co.,* 61 So. 164 (Miss.) and Annotation, 43 L. R. A. (N. S.) 1146.

Even the bonds in an issue of $42,000 may have many different owners. In larger issues, the owners may be numbered by hundreds and in an active market may be ever changing. Investors, normally, are not confined to any one locality and holders of bonds, conceivably, may reside in many different cities, states or foreign countries. The borough did not sell the bonds to plaintiff. Plaintiff bought the entire issue from the successful bidder without actual notice to the borough of that fact. It is common knowledge that entire issues of bonds, often, if not usually, are bought for the purpose of resale. These were municipal bonds and as such were tax exempt and no certificate indicating ownership was required with an interest coupon when presented for payment. The important fact is that a municipality ordinarily has no means of ascertaining who the owners of its bonds are, and to say that it must give actual

notice to unknown and unascertainable persons is to nullify the provision of the bonds, assented to by the purchasers, and to deprive the municipality of the right reserved.

A view of the law, contrary to appellant's contention, has been taken in a number of cases which hold that where no method of giving notice of the election to redeem is expressly provided in the bonds, a city may fulfil its obligation to the holders of bonds by notice by publication in newspapers of general circulation. The reasons in support of this view are more persuasive.[1]

---

[1]In *Stewart v. Henry County*, 66 F. 127, the writer of the opinion said: "It is true, as suggested by plaintiff, the county could have provided in the bond for notice, and how it should be given. On the other hand, it seems to me, the defendant might with equal, if not greater, force reply that the plaintiff took the bond with full knowledge of the fact that the right was reserved to the defendant county, at any time after July 1, 1887, to elect to pay; and, inasmuch as he took the bond when issued without exacting any specification respecting notice, it does not come with grace for him afterwards to demand without any notice to the county, that he would expect it to notify him, or, without keeping it advised that he was the holder of any such bonds, to claim that he should have his interest until such time as he had actual notice of the election made by the county. In construing a contract regard must be had always to the circumstances under which it was made, to the subject-matter, as well as the reasonable and customary method of its performance. The plaintiff knew when he took the bonds that they were subject to the provision respecting the option. He knew that such bonds possessed all the qualities of commercial paper on their face payable to bearer, and as such passed freely from hand to hand by mere delivery, and entered into all the channels of trade and commerce, like inland bills of exchange. How, then, was it possible for the defendant to know, when it made its election to pay, who held this or that particular bond and the coupons?" And, referring to the contention that bondholders must be given actual notice: "Such a construction would be so unreasonable and impractical that the court should hesitate to adopt it, if there is any other more reasonable, natural, and equitable construction to both parties." See also *State v. City of Tallahassee*, 170 So. 879 (Fla.)

Under the law, as we view it, the duty imposed upon a city about to exercise the right, requires no more than the giving of such notice to holders as is reasonable under the circumstances.

We cannot escape the conclusion that if a municipality has actual knowledge that all of the bonds of an issue about to be retired are held by a known person or corporation only actual notice of the call is reasonable notice. But under the circumstances of this case, if the city did not have that knowledge we are of the opinion that the notice given by advertisement was sufficient though in general, the better practice would be to give notice for at least thirty days by publication in the city of the issue and a like notice in one or more financial centers where the bonds likely would be held.

The testimony is sufficient to support the conclusion that the city did not have actual knowledge that plaintiff was the owner of bonds. Plaintiff contends that the city was charged with that knowledge because of letters directed by it to the Treasurer of South Bethlehem Borough immediately before every semi-annual interest date in the following form: "We beg to ask whether any of the above bonds have been or will be called for redemption [stating the due date of the next maturing coupon]. (Signed) The Philadelphia Saving Fund Society, W. G. Bowler, Ass't Treasurer." The City of Bethlehem admitted receiving some of these inquiries and on ten occasions replied by letter that it had no intention of redeeming the bonds at the time referred to. It did not admit receiving a similar inquiry on March 15, 1938 immediately before the call but did receive plaintiff's letter of September 23, 1938, and in reply informed plaintiff that the bonds had been called for redemption on June 1, 1938. Since these were negotiable bonds the question must be limited to the city's knowledge that plaintiff owned bonds *at or about the time of the call*. None of the letters contained an unequivocal assertion of ownership and all of plaintiff's

inquiries were addressed to the Treasurer of Borough of South Bethlehem which had ceased to exist in 1917 and not to the City of Bethlehem. That the city did not give plaintiff notice of the call, in itself, is some evidence that it did not regard plaintiff as owner of the bonds. To have given actual notice would have been a simpler process than to notify plaintiff by advertisement. Inquiries of this nature conceivably might be made by a financial institution as a part of a service to its customers or clients, to ascertain call dates for their information or for some other reason not necessarily implying ownership. Unless the inquiry came from one entitled to the information, the city was not obliged to reply. The fact that all the coupons as they matured, came to the Bethlehem bank for payment, and presumably to the city after payment, in an envelope carrying plaintiff's name, is no indication that plaintiff owned the coupons or the bonds. It is common practice for a bank receiving coupons from various customers for payment or collection, to place them all in one envelope bearing the bank's name and a description of its contents as a convenient method of forwarding them to its correspondent in the city where payable. The name on the envelope ordinarily is that of the initial forwarder and not the owner.

Even though we agree with plaintiff's contention that if defendant knew that plaintiff owned all the bonds, it was entitled to actual notice of the call, we are unable to find such error in the charge of the court as, under the circumstances, will warrant the granting of a new trial. We are not prepared to say that the weight of the evidence is not with defendant in the absence of unequivocal notice of ownership at or about the time of the call. Of controlling importance is the fact that the charge was as favorable to plaintiff's recovery as it was to the defendant. Plaintiff did not invite error but it acquiesced in it and under the charge

458

the jury might have found the notice insufficient even as to unknown owners. Plaintiff had as much to gain by the charge as it had to lose and having taken its chances, should not now be heard to complain. The court at the close of the charge gave counsel the opportunity of suggesting corrections or additions. The only request made by defendant had no bearing on the questions raised in this appeal. In the absence of a request for additional specific instructions and of an exception to the charge of the court, plaintiff is bound by the verdict. It cannot be objected for the first time on appeal that the court erroneously submitted a question of law to the jury or a mixed question of law and fact. 4 C. J. S. Appeal and Error §304; *Pennsylvania R. Co. v. Page,* 12 A. 662; *Robbins v. Farwell,* 193 Pa. 37, 44 A. 260; *Shipley v. Pittsburgh, Etc., R. R. Co.,* 216 Pa. 512, 65 A. 1094.

Judgment affirmed.