**BOGART et ux. v. UNITED STATES.**

No. 3619.

Circuit Court of Appeals.
Tenth Circuit.
July 22, 1948.

BRATTON, Circuit Judge, dissenting.

Dale M. Stucky, of Wichita, Kan. (Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, and Manford Holly, all of Wichita, Kan., on the brief), for appellants.

Elizabeth Dudley, Atty., Dept. of Justice, of Washington, D. C. (A. Devitt Vanech, Asst. Atty. Gen., Paul L. Aylward, Sp. Atty., Dept. of Justice, of Ellsworth, Kan., and Roger P. Marquis, Atty., Dept. of Justice, of Washington, D. C., on the brief), for the United States.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

John W. Bogart was the fee owner of 240 acres of land situated in Greenwood County, Kansas. On March 25, 1946, the Inland Construction Company [1] acquired a rock and gravel lease on 7½ acres of the land. On March 26, 1946, the United States instituted a proceeding for condemnation of the land. On the same day, an order was entered in the proceedings granting the United States immediate and exclusive possession.

Two employees of the War Department contacted Bogart and Hattie Bogart, his wife, and obtained their signatures to an instrument entitled "Entry of Appearance and Stipulation." It described the land and stipulated that the Bogarts entered their appearance; that the fair cash value of the land was $1,900; that the Bogarts should be permitted to remain in possession until April 1, 1946; and that the improvements should be removed "on or before ———, 1946." One copy was retained by the Bogarts. Another copy was delivered to the Department of Justice. The latter copy differed from the Bogarts' copy in three particulars: It fixed the date for relinquishment of possession as March 26, 1946, provided that the improvements should be removed on or before August 1, 1946, and was signed by Paul L. Aylward, a Special Attorney for the Department of Justice. The stipulation bore the caption and number of the instant case in the District Court and must have been signed by the Bogarts after March 26, 1946.

Aylward testified that he was authorized to approve the stipulation July 17, 1946, and signed it shortly thereafter.

On July 24, 1946, the United States filed a declaration of taking under 40 U.S.C.A. § 258a, and deposited $1,900 as estimated compensation.

On August 22, 1946, Bogart wrote a letter to the Department of Justice, referred to the condemnation proceeding and the stipulation and inquired when settlement would be made for the land. On August 24, 1946, Peter F. Caldwell, Special Attor-

---

[1] Hereinafter called the Construction Company.

ney for the Department of Justice, wrote a letter to Bogart in which he acknowledged receipt of Bogart's letter and advised him that $1,900 had been deposited in the registry of the court; that the abstract of title disclosed an outstanding oil and gas lease and the rock and gravel lease of the Construction Company, and enclosed an affidavit of nonproduction and nondevelopment for the Bogarts' execution and return to cure the defect in the title created by the oil and gas lease, and a motion for withdrawal of the deposit for signature, verification, and return by the Bogarts. Caldwell stated that he would present the motion and approve an order of disbursement. The motion was for an order directing payment to the Bogarts of the $1,900 deposited as estimated just compensation, or so much thereof as the court should find just and equitable, and stated expressly that such sum should be paid without prejudice to the rights of the Bogarts to any additional amount finally adjudged to be just compensation, and without prejudice to the United States to recover from the Bogarts any amount paid to them in excess of the amount finally adjudged to be just compensation. The motion was signed and verified by the Bogarts and returned to Caldwell.

On September 10, 1946, Honorable Walter A. Huxman, sitting under assignment in the United States District Court for the District of Kansas, entered an order approved by Caldwell, which directed the payment of $1,000 to the Bogarts, and further ordered that the sum so paid should be without prejudice to the rights of the Bogarts to recover any additional sum which might be decreed to be just compensation "upon final determination" of the proceedings and without prejudice to the rights of the United States to recover from the Bogarts any sum paid to them in excess of the amount determined to be just compensation "upon final determination" of the proceedings. The Bogarts accepted the $1,000.

On October 1, 1946, the Construction Company filed its answer claiming damages for its leasehold in the amount of $5,000. Appraisers were appointed. On December 18, 1946, the appraisers filed their report fixing the damages and compensation at $2,900. On January 13, 1947, the United States appealed from the award of the appraisers. The matter came on for a pretrial conference. At the pre-trial conference, the court stated: "Let the record show as to another issue in this case, with reference to the purported agreement that the parties in open court have waived a jury trial as to that issue and have agreed to submit it as to this tract to the Court, without prejudice of either of the parties, to have a determination of the value at the time of this trial." The cause came on for trial. The jury returned a verdict fixing the just compensation at $4,400 and expressly finding that the rock and gravel deposit did not enhance the value of the land. Thereafter, on May 26, 1947, the United States filed a motion for a judgment on the stipulation, notwithstanding the verdict. On July 7, 1947, the United States filed a motion to modify the order of disbursement entered on September 11, 1946, by eliminating therefrom that portion of the order which provided that the amount paid to the Bogarts should be without prejudice to their right to any additional amount which might be finally decreed to be just compensation, and without prejudice to the right of the United States to recover from the Bogarts any amount paid in excess of the amount finally determined to be just compensation. Judge Huxman, by order entered July 15, 1947, refused to modify his prior order. Thereafter, the trial court entered judgment on the stipulation, notwithstanding the verdict, fixing the just compensation at $1,900, with interest at the rate of 6 per cent per annum from March 26, 1946, to July 24, 1946, and adjudging that the balance of the deposit be paid to the Bogarts, and that the United States pay, in addition thereto, the award of interest.

The Bogarts have appealed.

The question presented is whether the United States and the Bogarts abandoned the stipulation. It is obvious, we think, that when the stipulation was entered into the United States had no knowledge of the Construction Company's leasehold; that neither the United States nor the Bogarts contemplated any portion of the $1,900

stipulated to be just compensation would be paid to the Construction Company, and that the Bogarts understood they would receive $1,900 for their interest.

■ A condemnation proceeding is an in rem proceeding and when land is taken in which separate interests or estates are owned by two or more persons, as between the public and the owners, it is regarded as one estate. One award as just compensation for the entire value of the land is made and it stands in place of the property appropriated as the equivalent thereof. The distribution of the award between the owners of separate interests or estates is a matter wholly between them and the public is not concerned therewith.[2]

It follows that had the stipulation stood as between the United States and the Bogarts, any award to the Construction Company would have been paid out of the $1,900 which had been stipulated to be just compensation. The Construction Company asserted a claim for $5,000. Thus, it will be seen that when the lease and claim of the Construction Company became known, it became apparent that the stipulation was unworkable and the motion prepared by Caldwell, at his request, signed, verified, and returned to him by the Bogarts, and presented to Judge Huxman by counsel for the United States, and the order approved by Caldwell entered thereon shows, we think, that the Bogarts and the United States abandoned the stipulation. The conduct of counsel for the United States in preparing the motion, presenting the same, and securing the order approved by him, was wholly inconsistent with any obligation to pay the Bogarts $1,900 under the stipulation. This was also true of their conduct at the trial. They did not recognize the stipulation as fixing their obligation to the Bogarts and did not offer to pay any additional amount awarded to the Construction Company. It was not until the claim of the Construction Company had been disposed of by the jury that counsel for the United States recognized the stipulation and sought to have it enforced.

■■ A stipulation may be rescinded or abandoned by the parties thereto. Formal rescission is not necessary. Conduct of one party inconsistent with the stipulation, acquiesced in by the other party, may constitute abandonment or rescission.[3]

■ We are of the opinion that the conduct of the United States, acquiesced in by the Bogarts, abrogated the stipulation and operated to release the Bogarts therefrom.

The judgment is reversed and the cause is remanded, with instructions to enter judgment on the verdict of the jury in favor of the Bogarts.

BRATTON, Circuit Judge (dissenting).

In the absence of a binding agreement, compensation for property taken by condemnation for public use must conform to the exactions of the Fifth Amendment. But the constitutional provision does not prohibit the parties to an action of this kind from agreeing upon the amount to be paid for the property condemned. And where a valid agreement has been entered into fixing the value, it is the duty of the court to enter judgment for that sum. Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240; Albrecht v. United States, 329 U.S. 599, 67 S.Ct. 606, 91 L.Ed. 531.

The instrument signed by Bogart and wife was in the nature of an offer to accept the amount specified therein as the fair market value of the property, and the offer was later accepted. It may be conceded that neither of the parties to the stipulation contemplated that any portion of the amount fixed would be paid to the Construction Company. It may be conceded that all parties to the stipulation contem-

---

[2] City of St. Louis v. Rossi, 333 Mo. 1092, 64 S.W.2d 600, 604; Cornell-Andrews Smelting Co. v. Boston & P. R. Corp., 209 Mass. 298, 95 N.E. 887, 889; United States v. Dunnington, 146 U.S. 338, 350, 351, 13 S.Ct. 79, 36 L.Ed. 996; Carlock v. United States, 60 App. D.C. 314, 53 F.2d 926, 927; State v. Superior Court, 80 Wash. 417, 141 P. 906, 908.

[3] Roe v. Heatherington, 74 N.D. 692, 24 N.W.2d 56, 62; Fire Ass'n of Philadelphia v. Zorn, 82 Colo. 408, 260 P. 685, 686; Philadelphia Sav. Fund Soc. v. City of Bethlehem, 143 Pa.Super. 449, 17 A.2d 750, 753.

214

plated that the amount specified would be paid to Bogart and wife for their interest in the premises. And it may be further conceded that the parties to the stipulation did not contemplate that it would have effect in relation to the rights or interest of the Construction Company. But when the Construction Company was eliminated from the case by the verdict of the jury determining that the lease for rock and gravel did not have any value, the litigation was limited to the United States and Bogart and wife. The stipulation was effective as between them, and the court providently gave it force and effect in entering the judgment. The judgment should be affirmed.